FARLEIGH ET AL., RESPONDENTS, *v.* KELLEY, APPELLANT.

(No. 1,575.)

(Submitted May 14, 1903. Decided June 19, 1903.)

*Wills—Probate—Contest—Burden of Proof—Right to Open and Close—Evidence—Conspiracy—Subscribing Witness—Absence from State—Impeachment.*

1. Under Code of Civil Procedure, Section 2340, in a will contest, the contestants have the burden of proof, and are entitled to open and close.

2. In a will contest, where contestants alleged that petitioner and others conspired to defraud contestants out of their rights as heirs of deceased, and, pursuant to such conspiracy, had forged the will sought to be probated, evidence that, before this will was offered for probate, petitioner had procured her appointment as administratrix of deceased's estate, falsely alleging that she was his only heir, and, while acting as such administratrix, had sold a large portion of the property of the estate to her husband, and that contestants had instituted an action to have such proceedings and sale set aside, was admissible, under Code of Civil Procedure, Section 2340.

3. On the probate of a will, where the subscribing witnesses are out of the state, evidence that they had made statements contradictory of the facts contained in the attestation clause, and evidence that the reputation of such subscribing witnesses for honesty and integrity is bad, is admissible.

4.  In a will contest, where contestants had alleged that petitioner and others had conspired to defraud them of their rights as heirs of deceased, evidence that petitioner's husband, who was acting as her agent with reference to the estate, had asked the clerk of the district court to write to one of contestants, in answer to an inquiry as to the estate, that the property was not very valuable, and that petitioner had written a letter to the inquiring heir, stating that the estate had been settled and the property left to petitioner, was admissible, as tending to prove the charge of conspiracy.

5.  In a will contest, evidence that one of the subscribing witnesses had, some years after the execution of the will, brought the document to witness and explained his possession of it, was inadmissible.

6.  Extrajudicial declarations, not under oath, corroborating testimony given in court, cannot be received.

7.  Where evidence is offered as a whole, and part of it is incompetent, the exclusion of all of it is not error.

8.  In a will contest, evidence that witness had, prior to the date of the trial, met one of the subscribing witnesses of the alleged will, who said that a certain person had given him money with which to leave the state, and that he was going to leave, and that the person who had advanced the money had contracted with contestants to buy whatever interest in certain property they acquired from the estate, was inadmissible; the absence of the subscribing witness having been already sufficiently accounted for.

*Appeal from District Court, Jefferson County; Henry C. Smith, Judge.*

PETITION by Caroline V. Kelley for the probate of an instrument purporting to be the last will of John D. Allport, deceased, to which Lillie Sue Farleigh and others filed objections as contestants. From an order overruling a motion for a new trial, petitioner appeals. Affirmed.

## STATEMENT OF THE CASE.

On July 3, 1899, the appellant, Caroline V. Kelley, filed in the district court of Jefferson county her petition for the probate of an instrument in writing purporting to be the last will of John D. Allport, deceased, and to have been executed October 18, 1895. The petition sets forth the jurisdictional facts; alleges that the property left by the deceased was approximately of the value of $26,000; that petitioner is a sister of deceased; and then gives the names and residences of other relatives. By the terms of the alleged will, the petitioner is made sole legatee, and nominated executrix without bonds. On July 29, 1899, the respondents filed their written grounds of opposition to the

probate of the alleged will.  These grounds are that the proffered instrument is not the will of John D. Allport, and that he never made a will, but died intestate.  It is then alleged that the contestants Lillian Sue Farleigh and Mary A. Miller are sisters of deceased; that the contestant Devincy Allport is a brother of deceased; that contestant Frances C. Wellman is a daughter and only heir of Calista Coolidge, deceased, who was a sister of John D. Allport; and that the contestants are entitled to share in the estate.  As a further ground of contest, the contestants then set forth facts which they claim show a conspiracy on the part of the petitioner and other parties to them unknown to cheat and defraud the contestants out of their interests in Allport's estate.  It is alleged that, for the purpose of carrying out this conspiracy, immediately after the death of Allport, which occurred November 26, 1895, the petitioner, Caroline V. Kelley, who then resided in Denver, Colorado, came to Montana and filed her petition for letters of administration of the estate of Allport, in which she falsely alleged that she was the only heir of the deceased; that she thus fraudulently procured letters of administration to be issued to her as administratrix; that appraisers were appointed to appraise the property belonging to such estate, and that the petitioner falsely withheld from them the knowledge that certain valuable mining claims situated in Jefferson and Silver Bow counties belonged to such estate; that she procured an order for the sale of certain real property belonging to the estate to be made, and under such order she sold nearly all the property to her husband, George H. Kelley; that she procured an order of partial distribution to be made, upon the hearing for which she again falsely claimed to be the only heir of the deceased, to whom all of the estate thus distributed was transferred; that these contestants then discovered the facts above set forth, and, upon filing their petition alleging their relationship to the deceased and their interest in his estate, the petitioner, Caroline V. Kelley, admitted such relationship and interest, and the decree of distribution was set aside; that thereafter the said Caroline

V. Kelley, in furtherance of the conspiracy charged, procured to be forged a writing purporting to be the last will of John D. Allport, deceased, and commenced proceedings to have the same admitted to probate (in this alleged will these contestants were not mentioned at all, and were excluded from sharing in the estate); that these contestants filed their protest to the probate of the same; that issues were joined, and the cause set for trial to a jury, but before the conclusion of the trial the petition was, on the application of petitioner, withdrawn, and the proceedings dismissed; that thereafter such petitioner and others to contestants unknown, in furtherance of such conspiracy, procured to be forged the writing dated October 18, 1895, purporting to be the last will of said Allport, by the terms of which the said Caroline V. Kelley was made sole legatee, and nominated executrix without bonds. To these written objections the petitioner filed a reply (so called), denying all the material allegations contained in the written opposition. The cause came on for trial before the court and a jury, and upon application of contestants, and over the objections of the petitioner, the court ruled that the contestants had the burden of proof, and should open and close, after the petitioner had made formal proof of the execution of the alleged will, and that the contestants had the right to open and close the argument to the jury.

In answer to the several special interrogatories propounded, the jury found against the petitioner, and declared that the instrument offered was not the will of John D. Allport. From an order overruling petitioner's motion for a new trial, this appeal is taken.

*Mr. T. J. Walsh, Mr. B. H. Giles, and Mr. George F. Cowan,* for Appellant.

In a will contest the right of the proponent to open and close the case to the jury is established by an almost unbroken line of American authorities. Whether the proceedings are for a proof of the will in "solemn form," after it has been admitted

to probate in "common form," whether by bill in chancery after it is formally admitted by the probate court, or whether it takes the form of a "contest," such as is provided for by our statute, seems to make little difference. (*Hubbard* v. *Hubbard,* 7 Oregon, 42; 12 Ency. Pl. & Pr. 197; 1 Greenleaf on Evidence, 77; 1 Thompson on Trials, 239; Bailey on *Onus Probandi,* 389; Rice on Am. Probate Law, 54; Horner's Probate Law, 71; *Brooks* v. *Barrett,* 7 Pick. 94; *Seebrock* v. *Fedawa,* 30 Neb. 424; *Hardy* v. *Merrill,* 56 N. H. 227; *Taff* v. *Hosmer,* 14 Mich. 309; *Patten* v. *Cilley,* 42 Atl. 47; *Roger* v. *Thomas,* 1 B. Mon. 930; *Taylor* v. *Cox,* 153 Ill. 220-231; *Mayo* v. *Jones,* 78 N. C. 402; *Comstock* v. *Society,* 8 Conn. 254; Sec. 1080, Code of Civil Procedure, as amended by Act of March 1, 1897, Laws of 1897, page 241; *McCutcheon* v. *Loggins* (Ala.), 19 So. 810; *Woodruff* v. *Hundley* (Ala.), 32 So. 570; *Jamison* v. *Jamison* (Del.), 3 Houst. 112; *Rich* v. *Lemmons* (D. C.), 15 App. Ct. 507; *Potts* v. *House,* 6 Ga. 324; *Thompson* v. *Bennett,* 194 Ill. 57; *Morell* v. *Morell,* 157 Ind. 179; *Crowninshield* v. *Crowninshield,* 67 Mass. 524; *Kempsey* v. *McGinniss,* 21 Mich. 147; *Ankin* v. *Weckerly,* 19 Mich. 502; *Harvey* v. *Heirs of Sullins,* 56 Mo. 373; *Boardman* v. *Woodman,* 47 N. H. 120; *Syne* v. *Boughton,* 85 N. C. 367; *Brown* v. *Griffilh,* 11 Ohio St. 329; *Banning* v. *Banning,* 12 Ohio St. 437; *Runyan* v. *Price,* 15 Ohio St. 1; *Nicols* v. *Kershner,* 20 W. Va. 253; *Kerr* v. *Lunsford,* 31 W. Va. 659, S. C. 8, S. E. 493; *Kaine* v. *Trustees,* 5 N. W. 838; *Aultman* v. *Falkum,* 47 Minn. 414; *Carpenter* v. *First Nat'l Bank,* 199 Ill. 352; *Bradley* v. *Brady* (Ill.), 50 N. E. 124.)

The denial of the right of opening and closing a case to the jury constitutes reversible error. (*Tobin* v. *Jenkins,* 29 Ark. 151; *Mann* v. *Scott,* 32 Ark. 593; *Manseur* v. *Implement Co.,* 61 Ark. 627; *Royce* v. *Gazan,* 76 Ga. 79; *Sohn* v. *Jervis,* 101 Ind. 573; *Peed et al.* v. *Brennan,* 89 Ind. 252; *Crabtree* v. *Atchison,* 93 Ky. 338; *Lucas* v. *Hunt,* 91 Ky. 279; *Wright's Admr.* v. *N. W. etc. Ins. Co.,* 91 Ky. 208; *Abot* v. *Sugura,* 5 Martin, N. S. 73; *Johnson* v. *Josephs,* 75 Me. 544; *Edelen*

*Admr.* v. *Edelen,* 6 Md. 288; *Spaulding* v. *Hood,* 8 Cush. 602; *Robson* v. *Harrison,* 11 Cush. 40; *Hickman* v. *Layne,* 47 Neb. 177; *Rea* v. *Bishop,* 41 Neb. 202; *Millerd et al.* v. *Thorn,* 56 N. Y. 402; *Murray* v. *Ins. Co.,* 85 N. Y. 236; *Conselyea et al.* v. *Swift,* 103 N. Y. 604; *Hudson* v. *Weherington,* 79 N. C. 3; *Stewart* v. *Bledsoe,* 85 N. C. 473; *Addison* v. *Duncan,* 35 S. C. 165; *Bennett* v. *Sandifer,* 15 S. C. 165; *Sanders* v. *Bridges,* 67 Tex. 93; *R. R. Co.* v. *Strand,* 4 Wash. 311; *Hall* v. *Dairy Co.,* 15 Wash. 542; *Sammons* v. *Hanvers,* 25 W. Va. 678.)

*Messrs. Walsh & Newman, Mr. Robert B. Smith,* and *Mr. Charles R. Leonard,* for Respondents.

The court did not err in granting the contestants the right to open and close. (Code of Civil Procedure, Sec. 2340, div. 4; Code of Civil Procedure, Sec. 1080, as amended by Act of March 1, 1897; *In re Doyle,* 73 Cal. 564, 15 Pac. 125; *Allen* v. *Griffin,* 65 Wis. 529, 35 N. W. 21; *McCulloch* v. *Campbell,* 5. S. W. 590; Underhill on Wills, Sec. 165, p. 231; *McDonald* v. *McDonald,* 41 N. E. 336; *Patten* v. *Cilly,* 42 Atl. 47; *Schoff* v. *Laithe,* 58 N. H. 503; *Rogers* v. *Kendrick,* 63 N. H. 335; *Manufacturing Co.* v. *Head,* 59 N. H. 332; *Hilliard* v. *Beattie,* 50 N. H. 462; *Scott* v. *Hull,* 8 Conn. 296, p. 303; *Blume* v. *Hartman,* 8 Atl. 219.)

The discretion of the court in granting or refusing the right to open and close, is not reviewable on appeal, and is not reversible error. (*Marshall* v. *Am. Express Co.,* 7 Wis. 1; *Kaime* v. *Trustees Village of Ormo* (Wis.), 5 N. W. 838; *Elderkin* v. *Wiswell* (Wis.), 21 N. W. 541; *Austin* v. *Austin,* 45 Wis. 526; *Viele* v. *German Ins. Co.,* 26 Ia. 9; *Preston* v. *Walker,* 26 Ia. 205; *Smith* v. *Cooper,* 9 Ia. 379; *Woodward* v. *Laverty,* 14 Ia. 383; *White* v. *Adams,* 77 Ia. 295; *Van Horn* v. *Smith,* 59 Ia. 142; *Dent* v. *Smith,* 53 Ia. 262; *Delaware* v. *Duncat,* 48 Ia. 488; *Ashurst* v. *Grub,* 47 Ia. 353; *Aultman* v. *Falkum,* 47 Minn. 414; *Carpenter* v. *First Nat'l Bank of*

*Joliet,* 119 Ill. 352; *Park* v. *Durham,* 85 Ill. 569; *Valley* v.
*Tecwalt,* 79 Va. 421; *Day* v. *Woodworth,* 13 How. 363; *Hall*
v. *Weare,* 92 U. S. 728; *Lancaster* v. *Collins,* 115 U. S. 222;
*Scott* v. *Hall,* 8 Conn. 303; *Florence O. R. Co.* v. *Farrar,* 109
Fed. 254; *Cheek* v. *Watson,* 90 N. C. 307; *Moore* v. *Brown,*
6 S. E. 833; *Smith* v. *Fullenweider,* 19 Pac. 314; *Bradley* v.
*Brady* (Ill.), 50 N. E. 124; Nash's Pl. & Pr., 2d Nash, 972.)

MR. JUSTICE HOLLOWAY, after stating the case, de-
livered the opinion of the court.

1.   Had the contestants the right to open and close the case?
It is considered by the petitioner that so long as she was re-
quired to make some proof in the first instance, even though
it be formal in character, and only such as she would be required
to make in case no contest had been inaugurated, she was en-
titled to open and close the case, and in deciding against this
contention the district court committed prejudicial error.

Whatever may be the rule in other jurisdictions, where pe-
culiar statutory provisions have entered into the determination
of the question, there can scarcely be any serious controversy
as to the proper practice in this state. If the issues to be tried
were raised upon the allegations of the petition for probate,
and the objections made thereto in the written opposition of
contestants, it would then seem reasonable that the burden
would be cast upon the petitioner to maintain by a fair
preponderance of the evidence the allegations of her petition,
and this burden would carry with it the right to open and close,
but such is not the case.   The proceedings for the contest of a
will (before probate) are provided for in Sections 2340-2346
of the Code of Civil Procedure.   Paraphrased, Section 2340
would read:   The contestants must file written grounds of
opposition to the will offered, and serve a copy on the petitioner,
who may demur thereto upon any grounds for which a demurrer
to a complaint in a civil action may be interposed.   If the de-
murrer be sustained, the contestants may amend their written

opposition.    If petitioner's demurrer be overruled, she may file her answer traversing or otherwise obviating or avoiding the allegations of the written opposition, and the issues of fact raised by these two pleadings—(1) the written grounds of opposition, and (2) the petitioner's answer thereto—and none others, must be tried, by a jury if demanded; and upon such trial the contestants are the plaintiffs, and the petitioner is the defendant.

The issues to be tried, then, are raised by the allegations of the plaintiffs' (contestants') written grounds of opposition or complaint, and the defendant's (petitioner's) answer thereto. Thus the actual trial of the contest is not initiated until the proffered will is before the court (not the jury) upon the formal proof necessary to the probate of an uncontested will.    The very fact that the petitioner's answer need be nothing more than a general denial of the allegations contained in the written grounds of opposition emphasizes the evident intention of the legislature that the contestants shall have the laboring oar throughout the trial.    No other construction can be given to the language of Section 2340, above, and the plain meaning of the terms employed, be preserved.

The contestants are the plaintiffs.    They have the burden of proof imposed upon them, and with that they have the right to open and close.    (Section 1080, Code of Civil Procedure, as amended by Act Fifth Legislative Assembly, approved March 1, 1897 [Laws of 1879, p. 241].)    Section 1312 of the California Code of Civil Procedure is in terms identical with Section 2340, above, and received a construction in *In re Doyle's Estate,* 73 Cal. 564, 15 Pac. 125, in which Temple, J., concurring, said: "The same procedure is made applicable to a contest after the will has been admitted to probate as before.    In both, the contestant has the laboring oar, as though he is attacking something which he must overcome by affirmative proof. Under such circumstances, I think the theory of the statute must be that the contest begins after the petitioner has made his *prima facie* case.    In such case the burden would naturally

be on the contestant, and all the provisions consistent and harmonious."

2.   Contestants were permitted to make proof of the proceedings had in the administration of Allport's estate, of the attempt to probate the former will, of the transfer by Caroline V. Kelley to her husband, George H. Kelley, of a large portion of the property belonging to the estate, and of the proceedings instituted in the district court to recover such property back into the estate.   Of this complaint is now made.

We are of the opinion that the evidence was properly admitted.   Under Section 2340, above, the issues formed upon the contest of a will may involve the competency of the testator, his freedom from duress, etc., the due execution of the will, or any other question substantially affecting the validity of the will.   In this instance the pleadings put in issue the due execution and attestation of the will offered, and the question of the existence of a conspiracy formed by the petitioner and unknown parties to defraud the contestants out of their interests in the estate by successive attempts to have the property transferred to the petitioner, and, when all efforts had failed, by forging, or procuring to be forged, the alleged will offered for probate.   The petitioner interposed a motion to strike out all allegations with reference to the conspiracy charged, but no error is predicated upon the court's denial of the motion, and no question is made as to the sufficiency of the pleading.

The evidence offered tended to prove the allegations of the written opposition; tended to show the improbability that the will in controversy is genuine, and to disclose the motives of the petitioner in offering it.   It cannot be said that the only possible issues which can arise upon the contest of a will are such as involve the competency of the decedent to make a will, or his freedom from duress, menace, fraud, or undue influence, or the due execution or attestation of the will itself, for, if this be so, Subdivision 4 of Section 2340, above, is meaningless. Any question, other than these just enumerated, which affects

the validity of the will, may properly be the subject of controversy.

3.    Upon the trial the contestants were permitted to introduce evidence tending to prove that the subscribing witnesses to the will offered had made statements contradictory of the facts contained in the attestation clause attached to the will, and which also tended to impeach each of such subscribing witnesses by showing that his reputation for honesty and integrity is bad. It developed upon the trial that both subscribing witnesses were then absent from the state, and proof of the genuineness of their signatures to the purported will was made before the testimony above complained of was offered.

Section 1723 of the Civil Code provides the manner of executing and attesting all wills, other than holographic and nuncupative wills, and those provisions are mandatory. They are: "(1) It [every will] must be subscribed at the end thereof by the testator himself, or some person in his presence and by his direction must subscribe his name thereto. (2) The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them, to have been made by him or by his authority. (3) The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will; and (4) there must be two attesting witnesses, each of whom must sign his name as a witness, at the end of the will, at the testator's request, and in his presence." When a will is contested, the subscribing witnesses, if present in the county and of sound mind, must be produced and examined. If absent, the court may receive other evidence, if any can be had, of the facts mentioned in Section 1723, above, but, as a rule, such facts, or many of them, can be proved only by the subscribing witnesses; and, for the purpose of making such proof, Section 2343 of the Code of Civil Procedure provides for the identification of the handwriting of the absent subscribing witnesses to the will, and, that done, those parties, though dead or out of the jurisdiction of the court, become, to all intents and purposes, active, living

witnesses in court, giving testimony, as if under the sanctity of an oath, that at the time the instrument bears date the testator either signed it in their presence, or acknowledged to them that he had signed it or caused it to be signed, and that he then declared such instrument to be his will, and requested them to sign it as such witnesses, and that they did so in the testator's presence; and thus evidence of the due execution of the will in conformity to the requirements of Section 1723, above, is made. If this was not so, it would be practically impossible to prove the due execution of any contested will. The proof of the genuineness of the signature of the dead or absent subscribing witnesses to the attestation clause, when one is appended, is evidence in the case that all the facts recited in it, and which are prerequisites to the due execution of the will, actually took place as therein set forth. (2 Rice on Ev. 1207; *Allaire* v. *Allaire,* 37 N. J. Law, at page 325; *Scribner* v. *Crane,* 2 Paige, 147, 21 Am. Dec. 81), and supplies the proof which in many, if not in most, instances it would otherwise be impossible to obtain. This view is further emphasized by the language of Section 2343, above, which requires the subscribing witnesses, who are in the county where the cause is tried, and of sound mind, to be produced and examined; and, if such witnesses were present and sworn and examined by the petitioner, it would hardly be contended that they would not then be subject to the same rules of evidence, as mentioned in Sections 3379 and 3380 of the Code of Civil Procedure, as are applicable to other witnesses.

The provisions defining the term "witnesses," and the circumstances under which contradictory statements may be shown, are modified by Section 2343, above, to the extent that the exigency of the case permits the statement of the subscribing witnesses contained in the attestation clause, though not made under oath, to be received as primary evidence, or, in other words, permits the dead or absent witnesses to speak through the instrumentality of the statute itself, that its requirements have been fully met.

The petitioner 'may not have the benefit of the testimony of two witnesses to the facts that at the time of the execution of the will the testator subscribed the same in their presence, and declared it to be his last will and testament, without having such witnesses subject to be discredited or impeached. If this was not so, and the appellant's contention prevailed, no contest could be successfully waged against a will offered under such circumstances, for it would be practically impossible to disprove by other evidence the facts, or at least some of the facts, set forth in the attestation clause, or necessary to the due execution of the will; and, if not disproved, then the facts would stand as actually proved by the testimony of two witnesses not only entitled to full credit, but who cannot be impeached. (Section 3120, Code of Civil Procedure.) "The subscribing witnesses are subject to the same rules as to contradiction and impeachment as other witnesses." (Abbott's Trial Ev. (2d Ed.) 142.)

4. Complaint is also made that the court erred in admitting evidence of statements made by George H. Kelley to Henry G. Rickerts, then clerk of the district court. Before making this proof, the contestants had called the petitioner, Caroline V. Kelley, who testified that in all that was done by her husband, George H. Kelley, with reference to this estate, he was acting for her, and as her agent. Evidence had also been introduced of the transfer of a large portion of the property belonging to the estate by the petitioner to her husband, and of the efforts required to secure its reconveyance to the estate. As further evidence of the collusion and conspiracy charged, the contestants called Rickerts, who testified that, while the estate was in course of administration, he had received a communication from the husband of the contestant Farleigh, making inquiry with reference to the property left by Allport; that George H. Kelley came to him, and asked that he (Kelley) be permitted to answer the letter, and, upon a refusal of that request, asked Rickerts to say to Farleigh that the property consisted principally of real estate in the town of Basin, and was not very valuable. The objection interposed to this testimony was that it was in-

competent, immaterial and irrelevant.   Upon the issue of a
conspiracy to deprive these contestants of participating in the
Allport estate, this evidence, as well as the letter written by the
petitioner to Farleigh, telling him that Allport's estate had been
settled, and the property left to her, was relevant and properly
admitted—the declarations of George H. Kelley, as of a co-
conspirator, or as the petitioner's agent; and those contained
in the letter of the petitioner, as circumstances tending to prove
such conspiracy.

5.   Upon the trial the petitioner sought to prove by the wit-
ness Nichols that in May, 1899, the subscribing witness Geiger-
ich had come to his office and handed to him the will in contro-
versy, at the same time explaining the circumstances under
which he had held possession of the document from the time of
its alleged execution.   The substance of Geigerich's statement
to Nichols was that in October, 1895, Allport had executed the
will, and gone with Geigerich to the office of the Butte Hard-
ware Company to leave the instrument with one Kirby; that
Kirby was not in, and Allport then handed it to Geigerich and
asked him to deliver it to Kirby; that he (Geigerich) put the
will away, and forgot about it until May, 1899, when he went
to get a paper from a box in which he kept valuable papers, and
discovered the will and brought it to Nichols.   The offer to
prove these declarations by the witness Nichols was excluded.

As we have heretofore seen, Geigerich was, to all intents and
purposes, a witness in court, testifying under oath that the facts
recited in the attestation clause actually occurred as therein set
forth, and the reason for the rule which now excludes these
declarations made by him to Nichols is that his declarations not
made under oath cannot strengthen the testimony which he has
given under oath.   The issue involved was the genuineness of
the alleged will, and to permit declarations of the absent sub-
scribing witness in support of the validity of the will to be re-
ceived in evidence for any purpose whatever would be to re-
verse the rule of evidence which has long ago become well set-
tled—that extrajudicial declarations, not under oath, corrobo-

rating testimony given in court, cannot be received. Whatever exceptions there may be to this rule have no application to the facts of this case.

The declarations of Geigerich were hearsay, and notably so are his declarations of declarations made to him by Allport. But it is contended that they should have been received as a part of the *res gestae.* They were made nearly four years after the alleged will purports to have been executed, and cannot, therefore, be said to characterize or explain the principal fact, viz., the execution of the will. As to that, they are narrations of a past transaction, and, as such, inadmissible.

But it is contended that they characterize and tend to explain the possession of the will, and for that purpose, at least, were admissible. The evidence was offered *en masse*—the offer was an entirety; and along with the declarations of Geigerich, explaining his possession, were the declarations made to him by Allport, and these, as offered, were incompetent under any phase of the case. So long, then, as the offer included evidence incompetent, coupled with that which may have been competent, the court committed no error in excluding the offer in its entirety. It was not the duty of the court to separate the competent from the incompetent matter, and admit the one and exclude the other. It properly passed upon the offer as made, and was not required to do for counsel that which he should have done for himself. (*Yoder* v. *Reynolds,* 28 Mont. 183, 72 Pac. 417; *Clark* v. *Ryan,* 95 Ala. 406, 11 South. 22; *First National Bank* v. *North,* 2 S. D. 480, 51 N. W. 96; Thompson on Trials, 678.)

6. Complaint is made that the court excluded the testimony of James T. Finlen. By this witness it was sought to show that, some time prior to the date of the trial, Finlen met Geigerich, who said he was going to leave Montana; that one Heinze had given him money with which to leave. This testimony was excluded, and the petitioner then offered to prove that the contestants had contracted with Heinze to sell to him whatever in-

terests they acquired in the Minnie Healy mine from Allport's estate.   This offered testimony was also excluded.

We cannot conceive of any theory of the case upon which this testimony would be competent or material.   It is idle to urge now that at least it tended to account for the absence of the subscribing witness Geigerich, as required by Section 2343 above. It was offered at the last stage of the trial, long after proof sufficient to satisfy the court as to the absence of the subscribing witnesses had been made, and their handwriting identified.   The evidence was incompetent and immaterial, and was properly excluded.

We have examined the other errors assigned, and find no merit in them.   The order overruling petitioner's motion for a new trial is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY:  I concur.

MR. JUSTICE MILBURN:  I concur, although I do not agree with MR. JUSTICE HOLLOWAY in all that is said in Sections 5 and 6 of the opinion.

