The plaintiff brings action against the defendant on a complaint setting forth three causes of action. For her first cause of action the plaintiff, after stating the corporate existence of the defendant, alleges, among other things; that on the 25th day of February 1926, Sigurd A. Krogh applied to defendant for a $2,000 twenty-year endowment policy, a copy of the application being attached to and made a part of the complaint as exhibit A; that on the 19th day of March, 1926, he was examined by the medical examiner for the defendant; *Page 723 
that she is the beneficiary named in the application; that at the time of signing the application for insurance the said Krogh paid to the defendant the full amount of the first premium and the defendant issued him a receipt therefor; that said receipt contained the following provision:
"It is a further term and condition hereof that, if at the time of making this application, cash payment in full of the first premium is made by me, and if the company at its head office is satisfied as to my insurability at the date of my medical examination, or personal declaration in lieu of medical examination, regard being had among other things, to the plan, the premium, and the amount of insurance applied for, then insurance, subject to the provisions contained in the company's regular form of policy therefor, shall be effective as from the date of such medical examination or personal declaration in lieu of medical examination, for an amount which is not to include any portion of the total insurance applied for which the company would in its practice ordinarily reinsure. If the company is not satisfied as to my insurability as hereinbefore mentioned, the sum actually paid at the time of making this application shall be returned. If the company is satisfied as aforesaid, a policy is to be issued forthwith."
That on or about April 1, 1926, the defendant issued a policy insuring the life of the said Krogh in the sum of $2,000 pursuant to his application and forwarded said policy to its state agent at Fargo, N.D.; that the said state agent, after the receipt of said policy, upon learning that Krogh was ill, failed and refused to deliver the policy and returned the same to the head office of the defendant; that the said Krogh died on or about the 9th day of April, 1926, due proof of death was furnished the defendant and demand made for the payment of the amount due on the policy, but the defendant has failed and refused to pay the same or any part thereof.
As a second cause of action, after realleging facts regarding the application and examination, the plaintiff says that at the time of signing the application for insurance the said Krogh paid to the defendant the sum of $59.25 and received a receipt containing the provision hereinbefore quoted; that prior to this he held two life insurance policies with the said company one of which had been "rated up" five years and that at the time he made this application it was not known at what amount *Page 724 
a policy would be rated and so that application was made in the form specified in the complaint and the amount of premium that was demanded by the soliciting agent was paid; that on the receipt of this application the company issued the policy in the sum of $2,000 and in said policy the defendant was "rated up" seven years; that the policy was forwarded to the state agent, but upon learning of the sickness of Krogh, the agent returned the policy and mailed a check for $56.10 to Krogh; that the reason the policy was "rated up" was because Krogh was suffering from rheumatism but that the cause of death of said Krogh was influenza; the proof of death was furnished and demand made for the payment as alleged before.
In the third cause of action after setting forth previous allegations plaintiff alleges that the defendant failed and refused to deliver the policy either to the insured or to the beneficiary though "offered the full premium on the policy rated up seven years." And so the plaintiff demands judgment against the defendant for $2,000 and costs.
The application referred to in the complaint is too lengthy to be set forth in full; but the provision quoted from the receipt is also one of the conditions of the application. This application calls for a twenty-year endowment accident benefit insurance policy with a semi-annual premium of $54.80 for the main benefit, and $1.30 for accident, or a total semi-annual payment of $56.10, and the insured gives his age as forty-three years. The application was taken by one R.E. Hatcher as soliciting agent and contains the statement that the insured party "paid to R.E. Hatcher $56.10 to cover the first premium on the policy applied for, subject to the terms and conditions contained herein and those indorsed on the receipt bearing the date and number of this application." The said application also contained the declaration and agreement "that all statements, representations and answers in the application, including those made or to be made to the medical examiner, or in the personal declaration of the applicant in lieu of medical examination, as part of this application, are a consideration for and a basis of the contract for insurance made between me and the said company, and whether written or printed, are declared to be true, full and complete; that no other statement, representation or information shall be binding or affect the rights of the company."
The defendant in its answer admits its corporate capacity; the *Page 725 
application for the insurance as set forth by the plaintiff in her complaint; the medical examination of the insured; that the plaintiff is the beneficiary named; denies the payment of the first premium, but admits the issuing of the receipt containing the conditions set forth in the complaint that the insured "paid the soliciting agent for the defendant a sum of money which was the correct form of premium if the deceased was found to be a normal risk and his application could be accepted on the terms which it was made;" denied issuing a policy insuring the life of the said Krogh pursuant to the application and denied forwarding any such policy to its state agents; the defendant admits no policy was delivered to the insured and puts the burden of proof as to the time of death on the insured; admitting that an alleged proof of death was furnished. Defendant also admits that no part of such insurance policy was paid.
In answer to the second cause of action defendant admits the insured paid its agent $59.25 but alleges $3.10 was returned to him and only $56.10 retained and denies that the form of the receipt set out is the true and correct form; it admits that the insured had two other life insurance policies, but denies there was any agreement to "rate up" the insured; defendant also denies that it issued any policy to the insured wherein he was "rated up seven years" and denies that any "policy of insurance was ever issued on or pursuant to the application of insurance they received or otherwise." Defendant admits the return of a check for $56.10 to the insured; that this was done at a time when the insured was reported to be ill. Defendant denies the "cause of death stated and admits it was notified of the death of the insured, and that a demand was made for the payment of an alleged policy of $2,000 but says there was no such policy in existence and the defendant paid nothing pursuant to such demand."
Answering the third cause of action the plaintiff admits that it "did not offer to deliver any $2,000 insurance policy as described in the complaint to Krogh deceased, to the plaintiff herein, or to anyone else."
The defendant then sets forth its affirmative defense which it is unnecessary to state owing to the situation which developed in the case. The case came on for trial and a jury was impaneled. Plaintiff offered some testimony and called a witness for cross-examination under the statute. The defendant, over the objection of the plaintiff, was *Page 726 
permitted to examine this witness and introduce an exhibit. A serious difference of opinion arising between counsel for the parties, and between the counsel for the plaintiff and the court, regarding the theory of the case, issues involved, and the relevancy of the testimony offered, it became apparent the law of the case as announced by the court precluded plaintiff proceeding further and so plaintiff made the offer of proof hereinafter set forth. Objection was made to the said offer, though counsel for defendant admitted "there is probably forty-five per cent of the offers that he made that I have no objection to at all; I will admit them, but I don't want him to be deprived of the things that he wants to prove. The fact that Sigurd A. Krogh made an application is admitted; that he paid the annual or the standard premium on that application is admitted; that the premium was returned in April, is admitted; the fact that this policy was sent down has been admitted; the fact that it never was delivered is admitted; and the fact that Doctor Arneson examined this man and sent in a medical examination form — he may not have sent it directly to Winnipeg, but it eventually got there, — is admitted, but as far as counsel going to prove by Doctor Arneson some conversation that the deceased had with him, when this examination in writing was being taken, we will object to his offer of proof on that on the ground that it is wholly incompetent and there is no foundation laid so far as this defendant is concerned; no authority shown in Arenson to have any conversation with the applicant whatever, or any authority to do anything that would bind the company, and so far as his offer to prove that Mr. Hatcher made some admissions in June of 1926, two months after this whole transaction was closed, without having proof of the agency, or the authority of Hatcher, and even after he had proved it, without it appearing that this conversation was a part of the res gestæ when they claim this contract was made. We object to that as wholly immaterial, and incompetent." The court said "the objections stated by counsel would be sustained. This for the purpose of understanding and clarifying the record, and the court has stated what its ruling would be heretofore."
At this point defendant was permitted to examine the witness called for cross-examination under the statute, and this excerpt from the record shows the disposition of the case. *Page 727 
"Mr. Toner: I understand that the plaintiff is willing to stand on his offer of proof."
The court: "Are you willing to stand on your offer of proof and my ruling?"
Mr. Sad: "As closing this case?"
Mr. Toner: "The proposition being that notwithstanding you proved what you have offered, it wouldn't do you any good anyway."
The court: "That is the ruling of the court."
Mr. Duffy (for plaintiff): "If that is the ruling of the court there would be no use in going further."
Mr. Toner: "I am asking you that, if you want to rest on your offer or want to go ahead and examine witnesses. I want to make a motion to dismiss on the record."
The court: "The court rules this, that while much of the offer, probably the greater part of it would be excluded on objection by the defendant, that even though it was allowed by the court, that upon motion of the defendant to strike some or the greater part of it out and dismiss the action, the court would have to grant such motion, as it is the opinion of the court that the proposed proof would not be of such a character as to establish a cause of action in the plaintiff. I think that covers the ground, and let the record show, to all of the rulings adverse to the plaintiff, an exception follows."
Mr. Toner: "The defendant at this time moves the court to dismiss the above entitled action for the reason and upon the ground among others that no contract of insurance or any other contract has been established between the deceased and the defendant insurance company, or the plaintiff and the insurance company; that the plaintiff has failed by evidence offered as well as by his proof, even if he made it, to establish a cause on contract against the defendant in favor of the plaintiff."
Mr. Sad: "That motion is objected to by the plaintiff."
The court: "The objection is overruled and the motion is granted."
The plaintiff appeals from the order of the court dismissing the action, and sets forth 17 specifications of error.
If the allegations of the complaint which are admitted by the answer, together with other admissions in the answer, the testimony already received by the court, and the competent testimony set forth in the *Page 728 
offer of proof do not entitle the plaintiff to a judgment against the defendant then the action of the court was correct in dismissing this case.
It will be observed from the quotations hereinbefore set forth that the defendant did not point out any particular defect but objection to the offer of proof as a whole. No objections were specifically made to certain of the offers, but an examination of the record shows that the court and the counsel were not so much concerned in specifying the particular grounds as they were in considering the general trend and nature of the whole offer. The offer was shut out on the theory that even if all of it were proved there would be no case.
The general rule in regard to offers of proof in such cases may be considered thus: If testimony is offered, part admissible and part inadmissible, the court may overrule objections thereto unless the defects are pointed out specifically; for a general objection does not avail where part of the testimony offered is admissible. Hilleboe v. Warner, 17 N.D. 594, 599, 118 N.W. 1047; Everson v. Casualty Co. of America, 208 Mass. 214, 94 N.E. 460.
Where the offer includes admissible and inadmissible testimony, wherein "competent and incompetent are blended," and a general objection is made, the court may, if it sees fit, reject all offered without having the defects pointed out specifically. The court is not required to separate them. This is the duty of the proponent. First Nat. Bank v. North, 2 S.D. 480, 51 N.W. 98; Farleigh v. Kelly, 28 Mont. 421, 63 L.R.A. 319, 72 P. 760; Over v. Schiffling, 102 Ind. 191, 26 N.E. 91.
Where the court sustains a general objection to an offer of testimony, some of which is incompetent and inadmissible, the proponent has no complaint for the objection is good in part. Rosenberg v. Sheahan, 148 Wis. 92, 133 N.W. 645; Adams v. Southern R. Co. 166 Ala. 449, 51 So. 991.
This brings us to an examination of what the plaintiff was required to prove in order to make out a cause of action; what was admitted; what was already proved by the witness who testified; and what the plaintiff offered to prove. In considering this we omit defendant's defenses and theory of the case.
The synopses of the complaint and of the answer show what the *Page 729 
plaintiff was required to prove. But one witness was sworn for the plaintiff — R.A. Hatcher — and his testimony admitted is to the effect that he lives in Fargo, his occupation is life insurance, he secured the application, exhibit 1, from Sigurd Alfred Krogh for life insurance policy with Great West Life and that it was his signature on the statement; that he got the check, exhibit 2, in payment of the premium on exhibit 1; the policy, exhibit 5, was received by him at his office about April 6, 1926; he kept no ledger account of policies but his office got a record card from the head office showing all of the conditions, premiums, rates, and everything else; that was his record; Mr. Settevik was in the office but he did not know the time; did not send the policy to Krogh "because there was an additional application with it that provided for an additional premium, and also in the additional application was a statement for him to sign that he was in good health. I had it on good reliable information at the time that he was sick." He also testified that the correct premium on the application sent in was $56.10. This was all of the testimony furnished by any witness. The parties stipulated that exhibit 5, the policy issued, "was written, signed at the head office of the Great West Life Assurance Company, at Winnipeg, Canada, and mailed to and received by R.E. Hatcher, Fargo, N.D., in full on April 7, 1926." During the progress of the trial "defendant admitted on the record that proof of death was made;" that Mr. Krogh died April 9, 1926, and that no part of the policy had been paid.
To supplement the admissions in the answer, the testimony, the stipulation, and the admissions on the record the plaintiff made his offer of proof consisting of twelve paragraphs as follows:
"1. That application was made by Sigurd Alfred Krogh, and a check given therefor for $59,25, and that Mr. Krogh took a medical examination at which medical examination Doctor Arneson informed him that he was a substandard risk, and that Mr. Krogh went on with the examination and such examination was sent or forwarded to the company.
"2. That Mr. Krogh took sick the first part of April and was on the point of death on the 8th day of April, 1926.
"3. We also want to prove that Mr. Hatcher forwarded to Mr. Krogh the check, the check leaving Fargo on the 8th day of April, 1926, and *Page 730 
that such check was not cashed until after the death of Mr. Krogh, and that Mr. Krogh never received the check in question.
"4. We want to prove, that at this time Mr. Hatcher told Mr. Ed. Settevik, on or about the 19th day of June, that he was going to send the policy ahead to Mr. Krogh, but that he found out from one Anderson, an Agent of the Great West Life Assurance Company that Mr. Krogh was sick, and he therefore wired the company for instructions, and they told him to return the policy.
"5. We want to prove that Mr. Hatcher told Mr. Settevik that he gave Mr. Krogh a binding receipt, which entitled him to insurance from the date of the medical examination, if his application was accepted.
"6. We want to make proof that Mr. Hatcher said to Mr. Krogh that he should take a twenty year endowment, for the reason that he would not be rated up so much under the twenty year endowment as the ordinary life, that Mr. Krogh had mentioned and spoken of.
"7. We want to show that Mr. Settevik was down to Fargo in the latter part of June and the girls in the office of Hatcher Brothers, showed him, or gave him the records that the policy had been received there the 7th day of April, and was marked for their records.
"8. We further want to prove that Mr. Hatcher later on told Mr. Settevik that he would not deliver the policy to him because he had not signed an agreement . . .
"9. We want to further prove that Mrs. Krogh is the beneficiary in this policy, and that she did not cash the check returned on account of this policy.
"10. We further want to show that the original application for this insurance is attached to plaintiff's exhibit 5, and that the medical examination or parts of it is attached to the plaintiff's exhibit 5, being the insurance policy written and forwarded to the office of Hatcher Brothers of Fargo.
"11. Further we wish to prove that no part of the said policy has been paid.
"12. We further want to prove that by the acts and declarations of Mr. Hatcher, and the medical examination, that he is an agent of the Great West Life Assurance Company, for the purpose of making the medical examination; that he intended, and the agreement between *Page 731 
Mr. Sigurd A. Krogh and the Great West Life Assurance Company was to the effect, that Mr. Krogh would be given a policy — a rated up policy, the amount of premium which was unknown to Mr. Krogh at the time he made the application and that from the acts and circumstances, we wish to prove that Mr. Krogh would have paid the additional premium on such rated up policy."
This is the offer of proof to which the excerpt from the record refers — the excerpt showing the objections and the rulings of the court. It is apparent that the objections were well taken. Clearly a goodly part of this offer was inadmissible being incompetent; such as the offer in paragraphs 5 and 7; and being all in one offer the court had the right to sustain the objection. Plaintiff made no attempt to separate the competent from the incompetent. Plaintiff had attempted to prove by Mr. Hatcher that he was the agent for the life insurance company and also to prove by Mr. Hatcher statements that he had made to the deceased. For example, Mr. Hatcher was asked, "Who do you represent?" and the objection was made that it was "incompetent and no foundation laid, and an attempt to prove agency by the admissions or statements of the agent." Also to prove by Mr. Hatcher that the deceased had other policies from the defendant through the Hatcher office. And a similar objection was made to the effect that "in order to show by the admission of an agent, any fact binding on his principal, he must first show the agency, and secondly he must show the scope of his authority." By these objections and the rulings of the court the plaintiff was prevented from eliciting answers to such questions. Of course the agent was a competent witness to state for whom he was working and the terms of his employment and the scope of his authority, and therefore in his offer of proof it is quite possible that paragraph No. 12 is sufficiently definite for this feature. But, irrespective of the objection directed to the competency of part of the offer it is clear that if the whole of the offer could have been proved it was not sufficient to establish a cause of action for the plaintiff. Exhibit 5 was not the policy applied for. It had different terms. The application itself provided that the company if not satisfied of his insurability was to return the premium paid. This clearly gave the company the right to reject the application and the application itself contained all of the terms and conditions of the contract that was tendered by the insured. There is *Page 732 
no proof furnished or offered that the company accepted the application sent in. It is clear the company did not, for it returned the premium. Exhibit 5 was an offer on the part of the defendant to insure the plaintiff on a different basis entirely; but this offer of the defendant was not presented to the plaintiff owing to his illness and death.
We are satisfied the court was right in holding that no cause of action was proved or offered to be proved and therefore the judgment of the lower court is affirmed.
BIRDZELL, Ch. J., and BURKE, CHRISTIANSON, and NUESSLE, JJ., concur.