In re WILLIAMS' ESTATE.    HARLEY et al., Respondents,
                    v. WILLIAMS, Appellant.

### (No. 3,435.)

(Submitted November 12, 1914.    Decided January 13, 1915.)

[145 Pac. 957.]

*Probate Proceedings—Wills—Contests—Publication by Testa-*
*tor—Evidence—Insufficiency—Attesting Witnesses—Interest*
*—Burden of Proof—Trial—Reopening Case—Discretion—*
*New Trial.*

New Trial—Hearing of Motion—Authority of Substituted Judge.

1. Like the judge who heard the cause, a district judge called in to pass upon a motion for a new trial therein may, in the exercise of a sound discretion and judging from the printed record before him, disregard any testimony which he deems unsatisfactory or improperly received.

Wills—Contests—Witnesses—Interest.

2. While the fees to accrue to an executor (a witness to the execution of a will, though not a subscribing one) may be said to constitute an interest to be considered in weighing his testimony in a will contest, in contemplation of law they are no more than compensation for services, and cannot be denominated a "legacy," or a "devise," or a "beneficial gift," within the meaning of section 4732, Revised Codes, so as to disqualify him for interest.

[As to attestation and witnessing of wills, see notes in 10 Am. Dec. 516; 114 Am. St. Rep. 209.]

Same—Subscribing Witnesses—Testimony not Conclusive.

3. The testimony of the attesting witnesses to a will is open to contradiction.

Same—Subscribing Witnesses—Admissibility of Evidence.

4. Where the attesting witnesses to a will are present in the county, they must, under Rev. Codes, sec. 7400, in a contest, be called and examined, and other testimony to prove the will cannot be received to the exclusion of theirs. Where, however, one is absent and his deposition is introduced, evidence of one not an attesting witness may properly be received to supplement the testimony of the subscribing witness who is present at the hearing.

Same—Publication by Testator—What Sufficient and What Insufficient.

5. Under section 4726, Revised Codes, the attesting witnesses to a will must, at the time they attest, be informed in some way (though not necessarily in words) by the testator himself that the instrument he has subscribed is his will; knowledge of his fact derived from any other source or at any other time being insufficient.

Same—Publication—Insufficiency of Evidence.

6. Evidence in a will contest *held* to show that the requirement of section 4726, Revised Codes, relative to publication of her will to the subscribing witnesses by the testatrix was not observed.

Same.

7. Where both subscribing witnesses to a will testified that testatrix did not publish to them the fact that the instrument was her will, the

subsequent impeachment of only one of them, was ineffectual to establish the will.

Same.

8. Where neither of the subscribing witnesses read the attesting clause, and both agreed that when the paper was handed to them for signature, it was so folded that they did not see that portion of it which stated that it was signed, published and declared by testatrix, *etc.*, the contention that the recitals of the clause showed that the requirements of the law had been met was unavailing.

Same—Evidence—Inadmissibility.

9. Evidence of a conversation between the two subscribing witnesses to a will mentioned above, in which one was said to have told the other that testatrix had stated to him at the time they signed it that the instrument was her will, was inadmissible in proponents' case in chief, as well as in rebuttal where no foundation had been laid.

Trial—Reopening Case—Discretion.

10. The refusal of an offer of proof made, upon a motion to reopen the hearing, after the cause had been taken under advisement, was a matter addressed to the discretion of the trial court.

Wills—Probate—Contest—Burden of Proof.

11. Upon the trial of the issues tendered by the contestant of a will on probate thereof and joined by the answer of the proponent, the burden of proof rests upon the former.

[As to burden of proof in will contests after probate, see note in Ann. Cas. 1914C, 535.]

Same—Subscribing Witnesses—Interest—Evidence—Admissibility.

12. A letter written by one of the subscribing witnesses after his deposition, which was introduced at the trial, had been taken, detailing his testimony, in which he emphasized portions by underscoring, was properly admitted as showing a state of mind properly to be considered in weighing his testimony.

*Appeal from District Court, Silver Bow County, Second Judicial District; R. Lee McCullough, a Judge of the Fourth Judicial District, presiding.*

Proceeding by Andrew J. Davis and another for the probate of the will of Rachel E. Williams, deceased, contested by Dorothy Alice Williams, by her guardian, Sibyl Scott. From a judgment admitting the instrument to probate, and from an order denying a new trial, contestant appeals. Reversed and remanded.

*Mr. J. E. Healy,* for Appellant, submitted a brief and argued the cause orally.

We submit that Harley, under the conditions presented here, was not competent as a witness under the provisions of section 4732, Revised Codes. The words "devise" and "legacy" are used therein in the common law and statutory sense; the added

words, "beneficial gifts whatever," must include the fees of an executor, or else there is no application for such words. Gifts *inter vivos* or *mortis causa* would not be included in a will. (*In re Ross' Estate,* 140 Cal. 282, 73 Pac. 976; *Conlin* v. *Board of Supervisors,* 99 Cal. 17, 37 Am. St. Rep. 17, 21 L. R. A. 474, 33 Pac. 753; *Bourn* v. *Hart,* 93 Cal. 321, 27 Am. St. Rep. 203, 15 L. R. A. 431, 28 Pac. 951.) Harley was incompetent at the common law. (*Fisher* v. *Spence,* 150 Ill. 253, 41 Am. St. Rep. 360, 37 N. E. 314; 40 Cyc. 1114.) Even without a contest, the burden of proof to show the proper execution of the will was upon the proponents. (*In re Hayden's Estate,* 149 Cal. 680, 87 Pac. 275.) The subscribing witnesses are the ones the law regards most highly; they are not formal witnesses merely; they are a substantial portion of the law regarding wills, and their testimony is highly regarded. (*Freeman* v. *Freeman,* 71 W. Va. 303, 76 S. E. 657; *Swanzy* v. *Kolb,* 94 Miss. 10, 136 Am. St. Rep. 568, 18 Ann. Cas. 1089, 46 South. 549; Schouler on Wills, sec. 348; Rev. Codes, sec. 7400.) With the exception that Harley does not renounce his executorship, this case is parallel with *In re Hitchler's Will,* 25 Misc. Rep. 365, 55 N. Y. Supp. 642, *Trustees* v. *Calhoun,* 38 Barb. (N. Y.) 148, and *Gilbert* v. *Knox,* 52 N. Y. 125.

The burden of proving the due execution of the will was upon the proponents at all times, and there is nothing in the cases which relieves the proponents of such burden. There is nothing to the contrary in *Murphy's Estate,* 43 Mont. 353, Ann. Cas. 1912C, 380, 116 Pac. 1004. (See *In re Hitchler's Will, supra; Latour's Estate,* 140 Cal. 414, 73 Pac. 1070, 74 Pac. 441; *Delafield* v. *Parish,* 25 N. Y. 9.)

Especially is the above true of the execution of an unnatural or unjust will as here shown in the evidence. (Schouler on Wills, sec. 77; *Meier* v. *Buchter,* 197 Mo. 68, 7 Ann. Cas. 887, 6 L. R. A. (n. s.) 202, 94 S. W. 883.)

The acts of the testator must be consummated before they can be attested. (*Reed* v. *Watson,* 27 Ind. 443.) If on examining all the witnesses and considering the attending circum-

stances a reasonable doubt remains whether one or more of the directions of the statutes have not been omitted, the probate must be refused, although the probability is that the paper expresses the testator's intentions. (*Tarrant* v. *Ware*, 25 N. Y. 425, note; *Chaffee* v. *Baptist Missionary Convention*, 10 Paige (N. Y.), 85, 40 Am. Dec. 225.)   The attestation of the witnesses should follow in point of time the signing by the testator, or his acknowledgment and the publication of the will, where that formality is required.   (Beach on Wills (pony series), sec. 43.) As was said in *Duffie* v. *Corridon*, cited in *Brooks* v. *Woodson*, 87 Ga. 379, 14 L. R. A. 160, 13 S. E. 712: "To witness a future event is equally impossible, whether it occur the next moment or the next week."   (See, also, *Lane* v. *Lane*, 125 Ga. 386, 114 Am. St. Rep. 207, 5 Ann. Cas. 462, 54 S. E. 90.)

In the states where publication is expressly required the courts have held that any method whereby the testator communicates to the witnesses that the instrument is his last will and testament is a sufficient publication. (*Buzby* v. *Darnell*, 52 N. J. Eq. 337, 31 Atl. 382; *Elkington* v. *Brick*, 44 N. J. Eq. 154, 1 L. R. A. 161, 15 Atl. 391; *Lane* v. *Lane, supra; In re Beckett*, 103 N. Y. 167, 8 N. E. 506; *In re Hunt*, 110 N. Y. 278, 18 N. E. 106.)   And the signing and request to witness must be made so that the witnesses may identify the signature. (*In re Keeffe's Will*, 155 App. Div. 575, 141 N. Y. Supp. 5; *Mackay's Will*, 110 N. Y. 611, 6 Am. St. Rep. 409, 1 L. R. A. 491, 18 N. E. 433.)   A statement in the attestation clause that the instrument is a will is not a good and sufficient publication of the will. (*Brinckerhoff* v. *Remsen*, 8 Paige (N. Y.), 487; *Bashin* v. *Bashin*, 36 N. Y. 416; *Abbey* v. *Christy*, 49 Barb. (N. Y.) 276.)   "In order to satisfy the statute, the declaration before the attesting witnesses must be unequivocal, whether expressed by words or signs.   It will not suffice that the witnesses have learned elsewhere, and from other sources, that the document is a will, or that they suspect such is the character of the paper.   The fact must in some way, although no particular form of words is required, be declared by the testator in their presence, so that

they may know it from him." (*Lewis* v. *Lewis,* 11 N. Y. 220; Schouler on Wills, 3d ed., p. 336; note to *Cook* v. *Winchester,* 8 L. R. A. 822; *In re Turrell's Will,* 28 Misc. Rep. 106, 59 N. Y. Supp. 780; Page on Wills, secs. 226–228; 40 Cyc. 1117, 1118.)

*Messrs. George F. Shelton, E. N. Harwood* and *Fred. J. Furman,* for Respondents, submitted a brief; *Mr. Shelton* argued the cause orally.

In the case of *Cottrell's Will,* 95 N. Y. 329, the will was admitted to probate notwithstanding both witnesses who subscribed to the attestation clause thereof testified in the surrogate's court, as stated in the opinion, "that none of the formalities required by the statute were complied with in its execution in their presence." (See, also, *Trustees* v. *Calhoun,* 25 N. Y. 422; *Orser* v. *Orser,* 24 N. Y. 51; *Ames* v. *Ames,* 40 Or. 495, 67 Pac. 737 (cited with approval in *In re Miller's Estate,* 37 Mont. 545, 97 Pac. 935) ; *Grimm* v. *Tittman,* 113 Mo. 56, 20 S. W. 664.)

In Woerner's American Law of Administration, volume 1, section 40, it is said, speaking of the witnesses to the will: "In most of the states they must know also, that he signed the instrument as and for his last will; to which end it is enacted by statute in Arkansas, California, Georgia, New Jersey and New York that, in addition to the acknowledgment of his signature, the testator must publish or declare in the presence of the attesting witnesses that the instrument by him executed is intended as his will. In these and other states it is held that the attesting witnesses must subscribe their names *animo attestandi,* but that no affirmative declaration to that end is necessary; any indication by the testator to the witnesses of his knowledge that the instrument to be attested by them is meant for his last will, is sufficient."

The testimony of a person who subscribed as witness to a will, attempting afterward to contradict the attestation certificate to which he subscribed, should be regarded with suspicion. (*In re Klein's Estate,* 35 Mont. 185, 88 Pac. 798; 30 Am. & Eng.

Ency. of Law, 595; *Hogan* v. *Grosvenor*, 10 Met. (Mass.) 54, 43 Am. Dec. 414; *Tilden* v. *Tilden*, 13 Gray (Mass.), 110.) In a note to *Schierbaum* v. *Schemme*, 80 Am. St. Rep. 604, speaking of the publication of a will, it is said: "It may be made in any form of communication by the testator to the witnesses whereby he makes known that he intends the instrument to take effect as a will. (*Coffin* v. *Coffin*, 23 N. Y. 9, 80 Am. Dec. 235.)" In the case of *Will of Meurer*, 44 Wis. 392, 28 Am. Rep. 591, it is said: "No special request by the testator to the witnesses to sign the will as witnesses thereto is necessary. If they sign in his presence, and without objection on his part, he knowing the fact that they are signing as witnesses, it is sufficient. (*Huff* v. *Huff*, 41 Ga. 696; *Brown* v. *De Selding*, 4 Sand. (N. Y.) 10; *Peck* v. *Cary*, 38 Barb. (N. Y.) 77; *Coffin* v. *Coffin*, 23 N. Y. 9, 80 Am. Dec. 235.)"

In *In re Claflin's Will* (1901), 73 Vt. 129, 87 Am. St. Rep. 693, 50 Atl. 815, it is said in the court's opinion: "In the case at bar the writing and signing of the will and the superintending of its execution constituted a sufficient publication thereof by the testator, and in attesting the will the witnesses attested its publication."

In the case of *Rogers* v. *Diamond*, 13 Ark. 474, and in *Remsen* v. *Brinckerhoff*, 26 Wend. (N. Y.) 325, 37 Am. Dec. 251 (both cited with approval in *In re Miller's Estate*, 37 Mont., at p. 561, 97 Pac. 935), it is held that where "there was at the end of the instrument an attestation clause, set forth in the customary form, that the testatrix 'acknowledged to each witness that she subscribed the same, and declared it to have been her last will and testament.' This, if the witnesses had been asked to read it by the testatrix, or in her hearing, would have been a silent but clear declaration" (*Remsen* v. *Brinckerhoff*, 26 Wend. (N. Y.) 325, 37 Am. Dec. 251, 258) ; and that such a circumstance in connection with the signing of the will by the testatrix in the presence of witnesses thereto is a sufficient declaration by the testatrix that the instrument is her will. (*Rogers* v. *Diamond*, 13 Ark. 474, 490.) To the same effect is the court's ruling in

*In re Woolsey's Will* (1896), 17 Misc. Rep. 547, 41 N. Y. Supp. 263.

Mr. Harley is named in the will as one of the executors, but he is not a subscribing witness. Nor is there any statute or other authority cited by appellant's counsel which supports his contention that Mr. Harley is incompetent to testify as a witness in this will contest. In *In re Miller's Estate,* 37 Mont. 545, 97 Pac. 935, the executrix of the will there in contest was permitted to testify as a witness concerning the execution of that will. It was also held in the case of *Slandley* v. *Moss,* 114 Ill. App. 612, that: "A witness to a will is not disqualified merely by reason of the fact that such will appoints him as executor thereof." We have not examined the last-mentioned case, but we suppose the court was there speaking of a subscribing witness. In *Davenport* v. *Davenport,* 116 La. 1009, 114 Am. St. Rep. 575, 41 South. 240, the court ruled to the same effect.

The burden of proving the due execution of the will was sustained in the case at bar by proponents at all times. But when sufficient evidence was introduced to establish the will, the burden of overthrowing it shifted, or should shift, to contestant. (*Farleigh* v. *Kelley,* 28 Mont. 421, 63 L. R. A. 319, 72 Pac. 756; *In re Murphy's Estate,* 43 Mont. 353, Ann. Cas. 1912C, 380, 116 Pac. 1004; *In re Latour's Estate,* 140 Cal. 414, 73 Pac. 1070, 74 Pac. 441.)

MR. JUSTICE SANNER delivered the opinion of the court.

Rachel E. Williams died on March 3, 1907, leaving an estate worth approximately $100,000, and only one near relative, a granddaughter, then aged seven years, the appellant in this court. An instrument in writing, purporting to be the last will and testament of Mrs. Williams, was offered by respondents for probate, by the terms of which the sum of $500 is given to the appellant, $1,000 to Mary Sullivan, a domestic, and all the balance of the estate to Andrew J. Davis, of Butte. Mr. Davis and Mr. Lyman M. Harley are named as executors. This instrument is not holographic, but, with the exception of the signatures and

the places of residence of the attesting witnesses, it is entirely written in the handwriting of a distinguished attorney of Butte, who was not present at its execution. It occupies the whole of one and part. of a second page. On the first page is the body of the instrument, the signature of Mrs. Williams, and the following part of the attesting clause: "The foregoing writing was signed, published and declared by Rachel E. Williams." On the second page is the remainder of the attesting clause in due form, the signature of Frank C. Norbeck, with his place of residence, and the signature of Warren A. Estabrook, with his place of residence.

The right to have this instrument received and regarded as the last will and testament of Mrs. Williams is contested by the appellant on several grounds, the chief of which is that Mrs. Williams did not declare to the attesting witnesses that it was her will, and that they were not requested by her to attest it as such. Trial was to the court, Hon. J. B. Poindexter, judge presiding without a jury. Mr. Norbeck was not personally present or within the county, but his deposition, taken at the instance of appellant, was on file. So far as the question now involved is concerned, the respondents rested upon the attesting clause, the testimony of Mr. Estabrook, which was received without challenge, and the testimony of Mr. Harley, which was admitted over the vigorous contention of appellant that it was inadmissible because of his interest in the outcome and because both attesting witnesses were before the court. The deposition of Mr. Norbeck was then read into the record as part of appellant's contest, and it was agreed, to save repetition, that all the testimony given should be considered in the record for all purposes. Findings of fact and conclusions of law were filed in favor of the will, and a decree was entered admitting the same to probate. Notice of intention to move for a new trial was served and filed; and, Judge Poindexter having been disqualified, this motion was heard by Hon. R. Lee McCulloch as judge presiding. The motion was denied; the order expressly stating, however, that "the testimony of Lyman M. Harley has been disregarded."

From this order, as well as from the judgment, the contestant has appealed.

It is advisable at the outset to determine the nature and effect [1] of the order appealed from. In this connection counsel for respondents say: "It will. be presumed, we believe, that Judge McCulloch did not assume that it was his province to reject evidence properly introduced and received at the trial before Judge Poindexter. If it was Judge McCulloch's opinion that the findings made by Judge Poindexter, who tried the contest, were fully sustained by the evidence, without considering the testimony of Mr. Harley, his expression of such opinion was entirely proper and is fully sustained by the record. But the insertion of such opinion in the order overruling the motion for a new trial was not proper." The inference sought to be drawn is that the order is in effect a general one, to be considered by this court as having been made upon all the evidence, including the testimony of Mr. Harley, if that testimony be necessary to an affirmance. To this we cannot assent. The order denying a new trial expressly disregards the testimony of Mr. Harley and excludes it from consideration. The order is, in effect, a special one, and must be reviewed by this court as such, unless the rejection of Harley's testimony was itself improper. The assumption that, because Judge McCulloch did not preside at the trial, he was powerless to reject the testimony of Mr. Harley is wholly unwarranted. It is quite true that, when a motion for new trial for insufficiency of the evidence is decided by a judge who did not preside at the trial, "he ought not to go further than to determine upon the dead record whether there is a decided preponderance of evidence against the verdict or decision," and the presumptions commonly invoked to sustain the trial judge in like circumstances do not apply (*Gibson* v. *Morris State Bank,* 49 Mont. 60, 140 Pac. 76); but this does not mean that the reviewing judge is deprived of all judicial faculty in considering the record before him; he must still "determine upon the dead record" where the preponderance of evidence rests; he must still estimate, as best he can, the weight and sufficiency of the evi-

dence as a whole and the value of its component parts, for his legal powers and duties in determining the motion are the same as those of the trial judge. That the trial judge, in passing upon a motion for new trial, can, in the exercise of a sound discretion, disregard any testimony which he deems unworthy is not open to doubt, and we can see no reason why a reviewing judge should not similarly determine whether any given evidence was improperly received or was so unsatisfactory in character that its want of value is patent on the printed page.

We do not hold, however, that Harley's testimony was improperly received, and do not assume that Judge McCulloch so held. The contentions of appellant are that Harley was disqualified for interest under section 4732, Revised Codes; and that his testimony was inadmissible, at least when received, under section 7400, Revised Codes. Neither position is sound. Section 4732 has no application, for the reason that Harley was not a subscribing witness, was not put forward as one, and was [2] not treated as such. While the fees to accrue to the executor might well be called an interest, to be considered in weighing his testimony, they are, in the eye of the law, but compensation for services, and can in no sense be denominated a "legacy," or a "devise," or a "beneficial gift," within the meaning of section 4732. Section 7400 is sought to be applied on the theory that both attesting witnesses were "present in the county," for which reason, it is asserted, other testimony to prove due execution could not be received at all, and certainly not until after they [3, 4] had been called and examined. Where the attesting witnesses are present in the county, they must be called and examined, and this means, of course, that under such circumstances other testimony to prove the will cannot be received to the exclusion of theirs; but their testimony, when given, is not necessarily conclusive upon either party. (*Farleigh* v. *Kelley,* 28 Mont. 421, 72 Pac. 756, 63 L. R. A. 319.) It was therefore the right of respondents to have the testimony of Harley at some stage of the proceeding and to have it on their preliminary proof, if they deemed it necessary to the establishment of a

*prima facie* case. Norbeck, however, was not present, and his deposition did not make him so; he could not be "called and examined." The fact that the deposition could be used for probative purposes only, upon the condition that he was absent, ought to settle the question of his presence; and, since he was not present, his deposition, taken at the instance of the appellant, furnished no legal obstacle to respondents' right to supplement the testimony of Estabrook by that of Harley.

We are required to conclude, then, that Harley's testimony was disregarded by Judge McCulloch because he placed no credence in it; and the question is, not whether this estimate is correct, but whether, upon the cold record, it must be branded as a clear abuse of discretion. We do not think so. Without entering at large upon a discussion of this testimony, we express the view that many reasons of record combine to at least authorize, if they did not compel, the action of the reviewing judge. This being so, his order must be taken as it stands—an adjudication of the question of execution upon the evidence of the attesting witnesses alone.

The substance of Mr. Estabrook's testimony is as follows: On January 21, 1907, he was asked by Mr. Harley to go that evening to the room of Mrs. Williams and witness a paper which he was given to understand was a will. He went to the room at the time appointed, entering with Mr. Norbeck and Mr. Harley. There Mrs. Williams was found sitting at a small table, upon which were pens and ink. She had in her hands the instrument in question. He and Mr. Norbeck took seats at the table. Mrs. Williams opened the paper, wrote upon the first page of it, folded the first page back, and passed the paper thus folded to Mr. Norbeck. She also proffered Mr. Norbeck the pen with which she had signed, but he declined it, preferring a fountain pen which he carried. Mr. Norbeck then placed upon the second page of the paper his name and place of residence and passed the paper to Mr. Estabrook. Mr. Estabrook asked Mr. Norbeck if he should sign in full, and Mr. Norbeck answered, "Yes," whereupon Mr. Estabrook put his name and place of

residence upon the second page.  At the time of doing so he saw, and may have glanced at but did not read, the declaration under which he wrote.  He knew from Mr. Harley's previous intimation that he was signing as a witness to a will, but there was nothing said by Mrs. Williams.  So far as he heard—and his hearing was good—neither "will" nor "testament" was mentioned at any time by her or by anyone else in her presence, nor did she in any way request the witness to sign, other than by her passing the paper and pen.  He thought, but would not swear, that there was some talk while he was signing.  If there was, its purport did not reach him at the time.  During this time Mr. Harley was present, but immediately afterward retired for a very few minutes at Mrs. Williams' request to procure some wine.

Mr. Norbeck deposed: "On January 21, 1907, Mr. Harley asked me to go to Mrs. Williams' room and witness a paper for her.  I went in company with Mr. Harley and Mr. Estabrook. When we entered, she was sitting rather propped up in a large chair, with a small table at her side, on which were the papers. I went over to where she sat, and, to relieve the situation, remarked that she was looking very well, to which she replied, 'I have suffered so much you would be surprised how thin I am.' Mr. Estabrook and myself sat down at the table across from her on which were the papers.  Mrs. Williams then asked Mr. Harley to go out and get us some wine, which he did.  Mrs. Williams then wrote on one of the sheets of paper on the table and turned that sheet over, which exposed a second sheet, on which I signed.  I did not see her signature, for the sheet she wrote on was turned back, covering the writing.  I signed on the sheet which, as I remember, was fastened to the sheet she signed by a pin or fastener or otherwise.  There was nothing said by Mrs. Williams or anyone else about the nature of the contents of the paper, and I therefore did not ask any questions or attempt to investigate.  I just signed my name in a perfunctory sort of way.  I then passed the paper over to Estabrook, after which he signed the same.  There were no other persons

in the room when we signed, except Mrs. Williams, Estabrook, and myself. Mr. Harley did not come back with the wine until after Mrs. Williams had written on the paper and Estabrook and I had signed our names to it. When he arrived, we partook of a small glass of wine, and Estabrook and I left immediately thereafter.'' Mr. Norbeck further deposed: That nothing at all was said by Mrs. Williams while they were in the room, ''except to order the wine and answer our comments about her health.'' ''As I remember, Estabrook said nothing. My conversation was limited to remarks about her health. * * * She made no signs or motions, except to write on the paper. She did not give by words or signs, or at all, any statement or means of knowing the kind of paper that she had signed or we had signed.'' With regard to publishing and declaring or acknowledging the .paper as her will and testament, ''she did nothing and said nothing upon that subject.'' ''I first learned and knew that I witnessed the paper purporting to be her will and testament at that time after her death. Mr. Will Scott of Helena came to Wallace, Idaho, where I was then living, and told me that I was a witness to her will. I did not see her after the 21st of January, 1907.''

Taking this evidence at face value, the conclusion indicated is well established. Our statute (Civ. Code 1895, sec. 1723; Rev. Codes, sec. 4726) provides: ''The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will.'' Compliance with this is essential. (*Noyes' Estate,* 40 Mont. 178, 105 Pac. 1013; *In re Walker,* 110 Cal. 387, 52 Am. St. Rep. 104, 30 L. R. A. 460, 42 Pac. 815; *Estate of Seaman,* 146 Cal. 455, 106 Am. St. Rep. 53, 2 Ann. Cas. 726, 80 Pac. 700; *Gilbert* v. *Knox,* 52 N. Y. 125; *Brinckerhoof* v. *Remsen,* 8 Paige (N. Y.), 487; *Keeffe's Will,* 155 App. Div. 575, 141 N. Y. Supp. 5; *Bioren* v. *Nesler,* 77 N. J. Eq. 560, 78 Atl. 201; *Ludwig's Estate (Tobin* v. *Haack),* 79 Minn. 101, 81 N. W. 758; *Richardson* v. *Orth,* 40 Or. 252, 66 Pac. 925, 69 Pac. 455; *Foley's Will,* 76 Misc. Rep. 168, 136 N. Y. Supp. 933; *Reed* v. *Watson,* 27 Ind. 443.) Such declaration, it is true, need not be in words. Where, for instance, the testator

is rational, the will is read to and signed by him in the presence of witnesses, and they, in his presence and with his intelligent acquiescence, are requested by another to attest the same and do so, the requirements of the statute have been sufficiently met. (*In re Miller's Estate,* 37 Mont. 545, 97 Pac. 935; *In re Beckett,* 103 N. Y. 167, 8 N. E. 506; *Elkinton* v. *Brick,* 44 N. J. Eq. 154, 15 Atl. 391, 1 L. R. A. 161.)  It is imperative, however, that the witnesses, at the time they attest, be informed in some way by the testator himself that the instrument he has subscribed is his will.  Knowledge of this fact, derived from any other source or at any other time, will not suffice.  (*Gilbert* v. *Knox, supra.*) Why this is so was explained in *Noyes' Estate,* 40 Mont. 178, 105 Pac. 1013, from which we quote: "The right to make a testamentary disposition of property is not an inherent right; nor is it a right guaranteed by the fundamental law.  Its exercise to any extent depends entirely upon the consent of the legislature, as expressed in the statute enacted on the subject.  It can withhold or grant the right, and, if it grants it, it may make its exercise subject to such regulations and requirements as it pleases.  It may declare the rules which must be observed, touching the execution and authentication of the instruments necessary to indicate the testator's intention and make a compliance with them mandatory.  *  *  *  The purpose of the formalities prescribed is to prevent simulated and fraudulent writings from being probated and used as genuine.  While the application of the strict rule of construction may sometimes defeat the intention of the testator as manifested by an imperfectly executed and authenticated writing, yet in the long run such statutes tend to promote justice, by lessening, so far as possible, the opportunity for fraud, which history and experience have demonstrated to be feasible and measurably safe in the absence of them.  *  *  *  Since the right to make testamentary disposition is dependent upon the will of the legislature, it is no hardship upon anyone that the mode and formalities by which it may be effectively done are made mandatory by the same power.  This rule of interpretation is recognized and applied

by the courts generally, both in England and in this country, whether the particular formality involved refers to the place of the signature of the testator, or the fact that he signed or made acknowledgment in the presence of the witnesses, or that he made publication, or that the witnesses have properly signed in his presence, and in the presence of each other and at his request. All of these formalities stand as of equal importance, and all must be observed.''

The conclusion which would be commanded by the evidence of the attesting witnesses is challenged upon the grounds that one of them, Mr. Norbeck, has been successfully impeached, and [7, 8] that every requirement of the law is shown by the attesting clause as well as by the testimony of Mr. Harley to have been fully observed. The statute requires publication to both witnesses, and it surely cannot be supposed that such publication is established by showing that one of the witnesses is unworthy of belief. Assuming that Norbeck's testimony should be disregarded, notwithstanding its agreement in all essentials with that of Estabrook, the latter still stands unassailed, and its effect, if credited, is just as fatal to the respondents. (*Noyes' Estate, supra; Bryant's Estate,* 163 App. Div. 890, 148 N. Y. Supp. 917; *Abbey* v. *Christy,* 49 Barb. (N. Y.) 276.) In neither witness, however, is any motive to falsehood adequately shown; yet both assert that they did not read the attesting clause, and both agree that the paper, when passed to them, was folded over so that the part so important to this inquiry was hidden from their sight. It was physically possible for them to have turned the paper back, but such an act might well have seemed an impertinence to them. They were laymen; the paper was not theirs; they were not charged with the knowledge that the portion they saw and did not read, coupled with the portion they did not even see, constituted a complete attesting clause, or that the testatrix knew it to be such. Under such circumstances and against such testimony, the recitals are unavailing. (*Brinckerhoof* v. *Remsen, supra; Hitchler's Will,* 25 Misc. Rep. 365, 55 N. Y. Supp.

642; *Darnell* v. *Buzby*, 50 N. J. Eq. 725, 26 Atl. 676; *Woolley* v. *Woolley*, 95 N. Y. 231.)

Mr. Harley's testimony was in all respects singularly apt and complete. We need not pause to inquire under what circumstances the testimony of a person named as executor in an unnatural will ought to prevail over the evidence of both attesting witnesses, one of whom it was not even sought to impeach. Suffice it to say that since the attesting witnesses, whether they speak directly or through the attesting clause, are open to contradiction, it is possible to prefer other testimony to theirs, and cases can be imagined in which this ought to be done, especially where there is a complete attesting clause. Obviously, however, any testimony to prevail must be accepted. Mr. Harley's testimony was not accepted but expressly disregarded; and the case, so far as this court is concerned, stands as though he had never spoken. His was the only evidence of record upon which the due execution of this will could possibly be asserted, and to deny a new trial, after its rejection, was wrong.

A number of alleged errors of minor character are assigned on the part of both sides. Respondents complain, for instance, [9] of the refusal to admit a conversation between Norbeck and Estabrook after they had left the room of Mrs. Williams, to the effect that Mrs. Williams had told Norbeck that the instrument in question was her will, and also of the refusal to receive the record of Norbeck's conviction for embezzlement. These are in no sense compensatory. The legal effect of the evidence is simply to impeach Norbeck, and not to establish any fact in issue. But, even if the court believed that Norbeck had knowledge, that fact would not establish a publication by the testatrix to both witnesses, as required by law, and, in view of what has been said, could be of no particular value to the respondents upon the merits of this proceeding. In view of a retrial, however, we say that there was no error in refusing to receive the conversation between Norbeck and Estabrook upon respondent's original case, because it was not part of the *res gestae*. nor in refusing it in rebuttal as contradiction of Norbeck, because no

foundation had been laid. As to the conviction, the offer of proof was not made at the trial but upon a motion to open the [10] hearing after the court had taken the cause under advisement. It was entirely within the discretion of the court to refuse the offer at that time. (*Cole* v. *Helena L. & Ry. Co.*, 49 Mont. 443, 143 Pac. 974.)

The principal assignments of appellant have been disposed of by what is said above. The only ones of consequence remaining are those which complain because the burden of proof was put upon her, and the one relating to the admission of a letter from Norbeck to Estabrook. There was no error in either instance. [11] Where the burden of proof lies in the contest of a will is not open to question in this state. The proponents must, under their petition, make formal preliminary proof of the due execution of the will, sufficient, but for the contest, to authorize probate; that is the door to any further proceedings, whether there be a contest or not. But the contest is not tried upon issues tendered by the petition for probate and joined by the plea of contestant; it is tried upon issues tendered by the contestant and joined by the answer of the proponents. (Rev. Codes, sec. 7397.) Upon the trial of these issues the contestant is necessarily the plaintiff and has the burden of proof. (*Murphy's Estate*, 43 Mont. 353, Ann. Cas. 1912C, 380, 116 Pac. 1004; *Farleigh* v. *Kelley, supra*.) Of Norbeck's letter it may be said: It was written after his deposition had been taken, and it de- [12] tailed, with emphasis on some points by underscoring, the substance of his testimony. This neither contradicted Mr. Norbeck nor furnished any basis for imputing falsehood to him, but it tended to show a state of mind—partisanship or pride of opinion, perhaps—which, though not necessarily important, was proper to be considered in weighing his testimony.

The judgment and order appealed from are reversed, and the cause is remanded for retrial.

*Reversed and remanded.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.