In re SILVER'S ESTATE. SILVER et al., Respondents,
v. SILVER et al., Appellants.

(No. 7,283.)

(Submitted November 12, 1934. Decided November 26, 1934.)

[38 Pac. (2d) 277.]

Mr. *P. E. Geagan,* for Appellants, submitted an original and a reply brief, and argued the cause orally.

146

*Messrs. McCaffery & McCaffery,* for Respondents, submitted a brief and argued the cause orally.

148

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Joseph R. Silver died in Butte, Silver Bow county, Montana, on January 25, 1932, and in due course his purported last will and testament was filed for probate. The disposition of decedent's property under the will is as follows:

"III. I bequeath unto my daughter, Flora Orem, widow of William B. Orem, the sum of one ($1.00) dollar, she having a competency of her own sufficient to assure her of the necessities and comforts of life without any assistance from me.

"IV. I bequeath to my son, Joseph R. Silver, Jr., of Long Beach, California, the sum of one ($1.00) dollar, he having received during my lifetime advancements from me amounting in value to more than either of my other children will receive under the terms of this will.

"V. I devise all real estate of which I may die possessed to my beloved wife, Mary Silver, for the term of her natural life, and at her death to my sons, William E. Silver and Francis A. Silver, in fee simple, share and share alike.

"VI.  I bequeath all personal property of which I may die possessed  *  *  *  to my sons William E. Silver and Francis A. Silver, share and share alike."

Joseph R. Silver, Jr., filed a contest which was thereafter dismissed without prejudice, and the will was admitted to probate.   Thereafter Joseph R. Silver, Jr., and Flora Orem filed their petition praying that the probate of the will be revoked on the grounds (a) that the writing was not subscribed by the decedent, nor by any person in his presence nor by his direction; that it was not published in the presence of subscribing witnesses as his last will, and was not signed by two attesting witnesses in the presence of, and at the request of, the decedent; (b) that the decedent was not of sound mind or memory at the time of the pretended execution of the writing; and (c) that at the time mentioned decedent was over seventy-four years of age and greatly enfeebled in mind and body, of which fact his sons, Francis A. Silver and William E. Silver, took advantage, as well as of the confidential relations existing between the decedent and Francis A. Silver, as his attorney and advisor.

The contestees denied the allegations of nonexecution, incompetency, and undue influence, and the issues thus raised were tried to the court and a jury.   At the close of the taking of testimony, the court withdrew from the consideration of the jury the issues of incompetency and undue influence; instructed them only on the law respecting due execution of an instrument of this nature, and submitted to them four special interrogatories to the following effect: (1) Was the instrument subscribed by Joseph R. Silver himself in the presence of Howard and Hanley?   (2) Was it acknowledged or declared by decedent to the attesting witnesses to be his will?  (3) Did the decedent acknowledge or declare to Howard and Hanley that the instrument was his will? and (4) Did Howard and Hanley sign the instrument as witnesses at the request of Joseph R. Silver, in his presence and in the presence of each other?   The jury answered each of these interrogatories in the negative, and upon these special findings of the jury the court

entered judgment revoking the probate of the will, and declaring the instrument of no force and effect as the last will and testament of Joseph R. Silver, and revoking the letters testamentary issued to Francis A. Silver on the probate of the will. The judgment further awarded the contestants their costs, payable out of the estate. The contestees seasonably moved for a new trial on the grounds of irregularities in the proceedings of the jury, passion and prejudice, insufficiency of the evidence to warrant the findings, that the verdict is against law, and errors in law occurring during the trial. This motion was overruled, and the contestees have appealed from the judgment.

The first nine specifications of error (of which there are 38) raise the question of the sufficiency of the evidence to warrant the special findings of the jury and the judgment of the court.

The rule on appeal in this class of cases is that the verdict or findings of the jury will not be disturbed if the record contains substantial evidence upon which it or they may be sustained. (*In re Carroll's Estate,* 59 Mont. 403, 196 Pac. 996; *Murphy* v. *Nett,* 47 Mont. 38, 130 Pac. 451.) But our laws grant to every person over eighteen years of age and of sound mind the right to dispose of the property he has accumulated by will (sec. 6974, Rev. Codes 1921), and enjoins upon the courts the duty to give effect to the intention of the testator, if possible (sec. 7016), and, unless there is *substantial* evidence tending to nullify the instrument, the court should not permit it to be set aside. (*In re Cummings' Estate,* 92 Mont. 185, 11 Pac. (2d) 968.)

When a will contest is instituted, the contestant assumes the position of the plaintiff in a civil action, and the burden rests upon him to establish the facts which he alleges will warrant the setting aside of the intention of the testator, or the declaration that the instrument challenged does not express that intention, by a preponderance of the evidence. (*Farleigh* v. *Kelley,* 28 Mont. 421, 72 Pac. 756, 63 L. R. A. 319; *In re Colbert's Estate,* 31 Mont. 461, 78 Pac. 971, 972, 107 Am. St. Rep. 439, 3 Ann. Cas. 952.) This is the rule

whether the contest is instituted before or after the proposed will is admitted to probate.

In the *Colbert Case,* above, the proponent of the will had merely petitioned the court for its probate when the state filed a protest against its probate, and, in outlining the procedure on the trial of the issues thus raised, this court, speaking through Mr. Commissioner Callaway, said: "In every will case under our statute the rule of procedure is that the proponent of the will must first make out a prima facie case; that is to say, must make such proof as would entitle the will to probate in the absence of a contest. Then the contestant attacks the validity of the will, the proponent defends the same, and the contestant rebuts the testimony of the proponent. Doubtless the proponent may surrebut any new testimony adduced for the first time in rebuttal (*Maloney* v. *King,* 30 Mont. 158, 76 Pac. 4), but the contestant has the right to open and close the case." Thus, on a contest before probate, the proponent of the will must first show that the will would be entitled to probate except for the contest, whereupon the parties proceed with the trial as in a civil action; the contestant occupying the position of a plaintiff, with a right to open and close, the contestee proceeding as the defendant.

Where, however, the contest is instituted after the will has been admitted to probate, the preliminary prima facie showing has already been made and need not be repeated. "The contest is not tried upon issues tendered by the petition for probate and joined by the plea of contestant; it is tried upon issues tendered by the contestant and joined by the answer of the proponents. * * * Upon the trial of these issues the contestant is necessarily the plaintiff and has the burden of proof." (*In re Williams' Estate,* 50 Mont. 142, 145 Pac. 957, 961.) The contest *after* probate must be filed "in the court in which the will was proved," and the contestant may attack either the validity of the will or the "sufficiency of the proof." (Sec. 10042, Rev. Codes 1921.) Here the only ground of contest submitted to the jury in effect challenged the sufficiency of the proof adduced on the hearing preceding its admis-

sion to probate. The contestants properly opened the trial by adducing their evidence attacking the execution of the will.

The contestants assert that the contestees "assumed the burden of proving due execution [of the will] at the trial below," on the theory that they produced their testimony in support of due execution before the will was attacked on that ground, and cite authorities to the effect that, where a party has erroneously assumed the burden of proof, the appellate court will treat the appeal as though the burden had been placed on such party by law. Their position is untenable. As noted above the will had been admitted to probate before this contest was instituted, which action could only be taken on proof that "the will was executed in all particulars as required by law" (sec. 10028; sec. 10030, Rev. Codes 1921, as amended by Laws 1925, Chap. 94, sec. 1) ; the order admitting the will to probate, therefore, constituted a judicial determination that the will was so executed.

The law requires that the testator must declare to the two attesting witnesses that the instrument signed is his will, and that they then sign as witnesses "at the testator's request, and in his presence." (Sec. 6980, Id.) Contestants' petition alleges that the "pretended will" was not signed by the testator in the presence of the persons signing as attesting witnesses, and that these latter did not sign as witnesses at the request of, and in the presence of, the testator, which allegations were denied by the contestees. The testimony, which the contestants now contend is sufficient to support the special findings of the jury and the judgment of the court, was adduced as a part of contestants' case in chief. The testimony in behalf of the contestees on this phase of the contest was in defense and refutation of the case made by the contestants. Of course, if this latter testimony disclosed facts supporting the allegations of the petition and refuting the presumption raised by the admission of the will to probate, that the will was duly executed, such evidence would support the special verdict, in that it would constitute a failure on the part of the contestees to overcome the proof adduced by the contestants. The con-

testees are in the same position as a party who fails to stand on a motion for nonsuit and thus assumes the risk of supplying the defects in the plaintiff's case. (*Emery Consol. M. Co.* v. *Erickson,* 64 Mont. 190, 208 Pac. 935; *Pure Oil Co.* v. *Chicago etc. Ry. Co.,* 56 Mont. 266, 185 Pac. 150; *Van Vranken* v. *Granite County,* 35 Mont. 427, 90 Pac. 164.)

If the will was duly executed, that act was accomplished "somewhere around three o'clock in the afternoon" of November 15, 1930, at the home of the testator and in the presence of Mary Silver, wife of the testator, Francis A. Silver, his son, George Howard and Clarence Hanley. The only testimony offered by the contestants in support of nonexecution is that of Joseph R. Silver, Jr., to the effect that he lived in California, but on the date in question was a guest in the home of his father and mother; that he was not in the house at the time mentioned, but was in the back-yard repairing a driveway to the garage; was between the house and the garage at about 3 o'clock on the afternoon of November 15, when he saw his brother, Francis A. Silver, leave the house by the side door, alone. On cross-examination the witness stated that he knew Howard and Hanley, and that they were not with Francis Silver, and finally that "I did not see Mr. Howard and Mr. Hanley in my father's home on the 15th day of November, 1930, and I mean to say they were not there."

Francis A. Silver testified that he is a lawyer residing in Helena; that at the request of his father and mother he drew a will for each, and mailed them to his parents at Butte on the 4th or 5th of November; that he was in Butte on November 15, when his mother requested that he make certain changes in her proposed will, which changes he dictated to a stenographer and caused to be made. He requested Howard and Hanley, lawyers with whom he had officed before removing to Helena, to go with him to his father's home and witness the wills. The three testified to making the trip from the office to the Silver home in Howard's car, arriving at their destination at about 3 o'clock; entering by the front door, they met the testator and his wife in the living-room. The three and

154

Mrs. Silver testified that Francis A. Silver then stated that Howard and Hanley were there to witness the wills, to which the testator replied "Fine" or "That is fine," and stated that Mrs. Silver might sign her will first, and, while she was doing so, he looked over his will and then signed it in the presence of the witnesses, who then, in his presence and in the presence of each other, signed the will as subscribing witnesses thereto; that the three lawyers left the house together, returned to the office in Howard's car, and there Francis A. Silver placed the wills in Howard's safe.

Thus, in answering the special interrogatories, the jurors accepted, as sustaining the burden of proof on the subject of the attendance of the subscribing witnesses, the deduction of one witness that the attesting witnesses were not at the house because he did not see them there, while admitting that he could not possibly have seen them if they entered and left the house in the manner they said they did. In refutation of that deduction they had the direct and positive testimony of four witnesses that the subscribing witnesses were present at the execution of the instrument.

Our statute provides that the jurors "are not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a less number, or against a presumption or other evidence satisfying their minds." (Sec. 10672, subd. 2, Rev. Codes 1921.) Under this provision, a preponderance of the evidence may be established by the testimony of a single witness as against a greater number who testify to the contrary (*Parchen* v. *Chessman*, 53 Mont. 430, 164 Pac. 531), and the "direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact, except perjury and treason." (Sec. 10505, Id.) But, in order to render these statutory provisions applicable, the witness must be entitled to full credit (*Bowen* v. *Webb*, 37 Mont. 479, 97 Pac. 839), and his testimony must be as to facts which he knows of his own knowledge, unless the matter comes within one of the numerous exceptions to the general rule that a nonexpert witness cannot tes-

tify to opinions, inferences, and conclusions from existing facts. (Sec. 10506, Rev. Codes 1921; *Watson* v. *Colusa-Parrot M. & S. Co.*, 31 Mont. 513, 79 Pac. 14.)

Contestant's testimony as to the conclusion that Howard and Hanley "were not there" does not come within any of the exceptions noted, but that statement was brought out on cross-examination and is properly in the record; the statement, however, is unimportant; if the indirect evidence contained in the testimony of Joseph R. Silver, Jr., is sufficient to warrant the inference that the men were not there, the jury could draw that inference from the testimony without considering his conclusion. (Sec. 10600, Rev. Codes 1921.)

The contestants contend that the jurors were entitled to disregard the positive testimony of the witnesses for the contestees because of "suspicious circumstances" appearing in that testimony: First, that discredit is thrown upon the statement of Francis Silver to the effect that he drew his father's will on November 4 or 5 and mailed it to him, by the testimony of Hanley that on November 15 Francis Silver produced the two wills and laid them on the table or handed them to his father and mother. As the evidence discloses that Francis A. Silver was at his father's home on November 15, before going to the office of Howard and Hanley, and that on the arrival of the three at the house he seated Howard and Hanley in the living-room and went to the kitchen where his father and mother were, there is nothing suspicious in the fact that Francis A. Silver had the wills in his possession just prior to the signing; nor does this testimony contradict his statement that he mailed the wills on November 4 or 5; the wills could have been handed to him on either occasion on November 15 when he visited his parents alone; he was not interrogated on the subject.

Further it is asserted that the testimony of the witnesses for contestees cannot be true if Silver left the house by the side door. No witness testified that the three lawyers went out of the front door in a body, and therefore there is no material conflict in the testimony of these witnesses and that

of Joseph Silver, Jr., that he saw Francis leave the house by the side door alone and did not see Howard and Hanley; if these two left by the front door, the witness could not have seen them do so, and his testimony respecting Francis' departure may well have referred to the former visit to the house.

Finally, counsel argues that the fact that the witnesses could not say just where the Howard car was parked when they started for the house, or describe the route taken on the trip, indicates that they were not telling the truth. These facts tend more to credit, than discredit, the testimony; it is not remarkable that witnesses fail to remember trifling or unimportant details of a transaction had a year and a half or two years prior to the trial. Meticulous particularity of detail and absolute identity of facts related would be more suspicious than the discrepancies and omissions noted.

However, without the testimony of these witnesses, the fact that the will had been proved and admitted to probate, and that the attestation clause thereto recites that all was done that should have been done, coupled with the fact that the will was certainly signed by the testator, which fact is established by a comparison of the signature with that of the testator appearing on many checks admittedly signed by him both before and after the signing of the will, raises a presumption of due execution which could be overcome only by clear and satisfactory evidence. (*In re Miller's Estate,* 37 Mont. 545, 97 Pac. 935; *Ross* v. *Taylor,* 39 S. D. 608, 165 N. W. 1079; *In re Mendenhall's Will,* 43 Or. 542, 72 Pac. 318, 73 Pac. 1033; *McCurdy* v. *Neall,* 42 N. J. Eq. 333, 7 Atl. 566; *Peck* v. *Cary,* 27 N. Y. 9, 84 Am. Dec. 222.)

To warrant the inference that the subscribing witnesses were not present at the time they say they witnessed the will, Joseph Silver's testimony could only be effective if it was shown that he was in a position to see that which he said he did not see; in other words, in order to prove that Howard and Hanley did not leave the house, the witness would be required to show that he was in a position to see the front

door at the time they say they left by that door, and that, if they had so left, he would have seen them, but did not. (1 Wigmore on Evidence, 2d ed., 1068; *Rau* v. *Northern Pac. Ry. Co.*, 87 Mont. 521, 289 Pac. 580.) The negative testimony of one not in a position to have seen what he says is not there is not even inconsistent with the positive testimony of witnesses who were in a position to testify affirmatively to that which they saw. (*Bergman* v. *Northern Pac. Ry. Co.*, (C. C. A. 8) 14 Fed. (2d) 580.) "The law requires, that he who deposes to a fact, should have the means of knowing it." (*State* v. *Allen*, 8 N. C. (1 Hawks.) 9, 9 Am. Dec. 616.) "It is a wild conceit that any court of justice is bound by mere swearing. It is swearing creditably that is to conclude its judgment." (*Casey* v. *Northern Pac. Ry. Co.*, 60 Mont. 56, 198 Pac. 141, 145; *Grant* v. *Chicago, M. & St. Paul Ry. Co.*, 78 Mont. 97, 252 Pac. 382.)

As the witness, Joseph R. Silver, Jr., at the time of which he testified, was neither in his father's house nor in a position from which he could see the front door, neither his conclusion that Howard and Hanley were not at the house at that time, nor the facts he related and from which he drew that conclusion, constituted "substantial evidence," and the findings of the jury are not only contrary to the preponderance of the evidence, but are without support in the testimony.

The only other theory upon which the special verdict could be upheld is that the testimony on behalf of the contestees itself overcame the presumption of due execution.

The law requires that the testator must subscribe the will ▮▮▮▮▮▮ in the presence of the attesting witnesses, and at that time acknowledge or declare to them that the instrument is his will, whereupon, at the testator's request and in his presence, each of the attesting witnesses shall sign his name as a witness. (Sec. 6980, Rev. Codes 1921.) It is here contended that the evidence outlined above shows that the testator did not declare the instrument to be his will, nor request Howard and Hanley to sign it as attesting witnesses, and that the failure of the memory of the witnesses as to whose pen was used

158

and whether the signing was done on a desk against the wall or on a table in the center of the room casts doubt upon the execution of the instrument and warranted the findings of the jury.

It is not necessary that it be made to appear that the testator expressly declared to the subscribing witnesses that the document executed was his will, or that he expressly requested them to sign it as witnesses; it is sufficient if, by words or conduct at the time of execution, the testator conveyed to them the information that the document was his will and thereupon signed it in their presence and in the same manner indicated that he desired them to subscribe it as witnesses. (*In re Miller's Estate*, 37 Mont. 545, 97 Pac. 935; *In re Noyes' Estate*, 40 Mont. 178, 105 Pac. 1013; *In re Williams' Estate*, 50 Mont. 142, 145 Pac. 957; *In re Cummings' Estate*, above.)

The failure of the witnesses to remember unimportant details of the execution of a will does not affect its validity (*Peck* v. *Cary*, above); nor do trivial matters such as those set out above cast any doubt on the execution of the instrument.

The contestants having failed to overcome the above presumptions of due execution by clear and satisfactory evidence, the court should have determined, as a matter of law, that there was no substantial evidence on their behalf for submission to the jury, and, as the execution in substantial compliance with the statute was apparent, should have held the will valid, and should have granted contestees' motion for dismissal of the petition. (*In re Mullin's Estate*, 110 Cal. 252, 42 Pac. 645; *In re Ballard's Estate*, 56 Okl. 149, 55 Pac. 894; *In re Cummings' Estate*, supra; see, also, *Davidson* v. *Stagg*, 94 Mont. 272, 22 Pac. (2d) 152; *West* v. *Wilson*, 90 Mont. 522, 4 Pac. (2d) 469.)

The contestants have made a number of cross-assignments of error based on the action of the court in withdrawing from the consideration of the jury their second and third grounds of contest, and excluding certain testimony relating thereto and offers of proof thereon, and on the overruling of their objections to the reception of evidence relating to those

grounds of contest. These assignments were evidently made under the assumption that such procedure was authorized by the provisions of section 9751, Rev. Codes 1921, which provides that: ''Whenever the record on appeal shall contain a bill of exceptions * * * setting forth any order, ruling, or proceeding of the trial court against the respondent, affecting his substantial rights on the appeal of said cause, together with the objection and exception * * * settled and allowed in such bill, * * * the supreme court on such appeal shall consider such orders, rulings, or proceedings, * * * and shall reverse or affirm the cause on said appeal according to the substantial rights of the respective parties. * * * And no cause shall be reversed upon appeal by reason of any error committed by the trial court against the appellant, where the record shows that the same result would have been attained had such trial court not committed an error or errors against the respondent.''

This section ''has application only to cases in which the respondent makes cross-assignments upon errors on rulings adverse to him and preserved in a bill of exceptions, in order to enable this court to determine whether those complained of by the appellant were compensated or rendered harmless by reason of them.'' (*Olcott* v. *Gebo,* 54 Mont. 35, 166 Pac. 300, 301.)

Consideration of alleged compensatory errors may only be indulged in with reference to the ''cause on appeal,'' the issue which was decided against the appellant, which decision he seeks to have reviewed by the appellate court. If, on the issues brought up on appeal, this court can say that the same result would have been reached had the court not committed error against the successful litigant, the judgment must be affirmed in spite of errors committed against the losing party. However, ''it was not intended by this section to do away with the necessity of an appeal by a party to a suit who feels himself aggrieved by the rulings of the court upon a cause of action separate and distinct from that which the appellant seeks to have reviewed on his appeal, even though

160

the causes may have been properly tried in the same suit."
(*Cook* v. *MacGinniss*, 72 Mont. 280, 233 Pac. 129, 132.) When
the court withdraws a cause of action from the consideration
of the jury, as, for example, a counterclaim interposed by the
defendant, and the plaintiff appeals from a judgment against
him, the only compensatory errors available to the defendant
on plaintiff's appeal are those committed with respect to plain-
tiff's case, or, if defendant has set up more than one counter-
claim, and all but one be withdrawn from the consideration
of the jury, and plaintiff appeals from a judgment in favor
of the defendant, the latter can only make cross-assignments
respecting errors committed with reference to the plaintiff's
cause of action and defendant's counterclaim held to be good.
Errors respecting matters not before the supreme court on the
appeal may only be presented on a cross-appeal. (*Bose* v.
*Sullivan*, 87 Mont. 476, 288 Pac. 614; *Cook* v. *MacGinniss*,
above.)

The only grounds of contest of a domestic will are found in
section 10032, Rev. Codes 1921, where they are merely specified
as the issues which may be raised and which the court is
required to try and determine. (*State ex rel. Ruef* v. *Dis-
trict Court*, 34 Mont. 96, 85 Pac. 866, 6 L. R. A. (n. s.) 617,
115 Am. St. Rep. 510, 9 Ann. Cas. 418.) These grounds are
stated in the alternative and are distinct and unrelated; they
may be joined in a single contest, but success as to any one
ground is in no manner dependent upon success or failure as
to any other ground mentioned. If the testator was incompe-
tent, undue influence is eliminated, as it could not be exercised
on a person lacking capacity to make a will. (*Murphy* v.
*Nett*, above.) If undue influence is shown, it is immaterial
whether or not the signer of the instrument was competent.
If either of these grounds is proved, due execution of the will
will not save it, and, if the document offered was not duly
executed, the question of competency and that of the exercise
of undue influence fade from consideration.

The only question presented on contestees' appeal is as to
whether or not the purported will was executed as required

by law, and no error committed with reference to the charges of incompetency and undue influence can compensate the error of the court in holding that the instrument was not legally executed. True, if the proof warranted a finding that the testator was mentally incompetent to make a will, it would have entitled the contestants to the judgment awarded, but the same is true as to stricken counterclaims; the judgment would be on a separate ground or cause of action which was not submitted to the jury and on which there has been no judgment other than, in effect, a directed verdict.

Technically, these matters could only be considered on a cross-appeal from a judgment of dismissal of the additional causes of action contained in the charges of incompetency and the exercise of undue influence. However, in the interests of justice, we have carefully considered the record with reference to these charges, and are convinced that the court did not err in withdrawing them from the consideration of the jury.

The judgment is reversed, and the cause remanded to the district court of Silver Bow county, with direction to dismiss the contest.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.

Rehearing denied December 8, 1934.