273 P.2d 391 (1954)
IN RE WOODBURN'S ESTATE.
NUNLEY
v.
WILLCUTT, et al.
No. 9287.
Supreme Court of Montana.
Submitted May 21, 1954.
Decided July 8, 1954.
Loble and Loble, Gene Picotte, Henry Loble, Helena, for appellant. Henry Loble argued the case orally.
Fred L. Gibson and Ben E. Berg, Jr., Livingston, for Willcutt's Estate.
Felt and Felt, Billings, for respondent H. W. Willcutt, Sr.
Ben E. Berg, Jr., Livingston, argued the case orally for respondents.
FREEBOURN, Justice.
The last will and testament of E.A. Woodburn, deceased, after hearing had, was denied probate in the district court. From such denial, Threcia Margaret Nunley, sole legatee and devisee in said will, appeals.
The denial of such will to probate arises out of the circumstances surrounding the *392 signing and acknowledgment of the will by the testator, and the signing of their names by the subscribing witnesses.
The will provides: "In Witness Whereof, I hereunto set my hand, at Livingston, Montana, this 7th day of March 1949, in the presence of E.J. Garrahan and Donald Swan whom I have requested to witness this, my last Will and Testament.
 "/s/ E.A. Woodburn."
Following the signature of E.A. Woodburn is the attestation clause which provides: "Signed, sealed, published and declared by the above named E.A. Woodburn, as, for and being his last Will and Testament, in the presence of us, who, at his request, and in his presence, and in the presence of each other, have attested the same, and have subscribed our names hereto as witnesses, on this 7th day of March, 1949.
 "/s/ E.J. Garrahan
 "Residing at Livingston,
 Montana
 "/s/ Donald Swan
 "Residing at Livingston,
 Montana."
The transcript showing what occurred in the lower court, and which constitutes the entire record before us, does not contain the testimony of the subscribing witnesses, Garrahan and Swan, in the form of question and answer, as given upon the hearing of the petition for probate of the will.
The transcript does show: "The testimony of the subscribing witness, E.J. Garrahan, was taken and filed in the case, which is in words and figures as follows, to-wit:
"(Title of Court and Cause Omitted.)
"Testimony of Subscribing Witness on Probate of Will.
"State of Montana |
 > ss.
County of Park |
"E.J. Garrahan, of lawful age, and a competent witness, being duly sworn in open court, testifies as follows:
"I reside in the County of Park, State of Montana, and am over eighteen years of age.
"I knew E.A. Woodburn on the 7th day of March, 1949, the date of the instrument now shown to me, marked as filed in this court on the 24th day of November, 1952, purporting to be the last Will and Testament of the said decedent.
"I am one of the subscribing witnesses to said instrument. I also knew at the said date of said instrument Donald Swan, the other of said subscribing witnesses.
"The said instrument was signed by the said decedent, at Livingston, in the County of Park, State of Montana, on the said 7th day of March 1949, the day it bears date, in the presence of myself and the said E.A. Woodburn thereupon published the said instrument as, and declared to me the same to be his last Will and Testament, and requested me, in attestation thereof, to sign the same as witness, and I, then and there, in the presence of said decedent, subscribed my name as witness to the said instrument.
"At the time of executing the said instrument, to-wit: the 7th day of March, 1949, the said decedent was over the age of eighteen years, to-wit, of the age of fifty-eight years, or thereabouts, and was of sound and disposing mind, and not acting under duress, menace, fraud, undue influence, or misrepresentation.
 "E.J. Garrahan
"Subscribed and sworn to in open court before me, this 16th day of Dec., 1952.
 "Arleda Guthrie, Clerk.
"(Seal)
"Filed Dec. 24, 1952."
As to the other subscribing witness, the transcript shows: "The testimony of the subscribing witness, Donald Swan, was taken and filed in the case, which is in words and figures as follows, to-wit:
"(Title of Court and Cause Omitted.)
"Testimony of Subscribing Witness on Probate of Will.
"State of Montana |
 > ss.
County of Park |
"Donald Swan, of lawful age, and a competent witness, being duly sworn in open court, testifies as follows:
"I reside in the County of Park, State of Montana, and am over eighteen years of age.
*393 "I knew E.A. Woodburn on the 7th day of March, 1949, the date of the instrument now shown to me, marked as filed in this court on the 24th day of November, 1952, purporting to be the last Will and Testament of the said decedent.
"I am one of the subscribing witnesses to said instrument. I also knew at the said date of said instrument E.J. Garrahan, the other of said subscribing witnesses.
"The said instrument was signed by the said decedent, at Livingston, in the County of Park, State of Montana, on the said 7th day of March, 1949, the day it bears date, in the presence of myself and the said E.A. Woodburn thereupon published the said instrument as, and declared to me the same to be his last Will and Testament, and requested me, in attestation thereof, to sign the same as witness, and I, then and there, in the presence of said decedent, subscribed my name as witness to the said instrument.
"At the time of executing the said instrument, to-wit: the 7th day of March, 1949, the said decedent was over the age of eighteen years, to-wit, of the age of fifty-eight years, or thereabouts, and was of sound and disposing mind, and not acting under duress, menace, fraud, undue influence, or misrepresentation.
 "Donald Swan
"Subscribed and sworn to in open court before me this 16th day of Dec., 1952.
 "Arleda Guthrie, Clerk.
"(Seal)
"Filed Dec. 24, 1952."
The testimony of the subscribing witnesses shows that the last will and testament of E.A. Woodburn, on the face thereof, complied with R.C.M. 1947, § 91-107, which sets forth how a written will should be executed. Section 91-107 is as follows:
"Every will, other than a nuncupative will, must be in writing; and every will, other than a holographic will, and a nuncupative will, must be executed and attested as follows:
"1. It must be subscribed at the end thereof by the testator himself, or some person in his presence and by his direction must subscribe his name thereto;
"2. The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them to have been made by him or by his authority;
"3. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will; and,
"4. There must be two attesting witnesses, each of whom must sign his name as a witness, at the end of the will, at the testator's request, and in his presence."
No particular attestation clause is prescribed by section 91-107, supra, but the attestation clause attached to Woodburn's will is complete and one which is in general use.
The attestation clause is a certificate showing the facts and circumstances attending the execution of the will and in the event the subscribing witnesses are not available by reason of death or other cause to give testimony in proof of the probate of the will, it has evidentiary value in establishing due execution of the will, and a complete attestation clause, such as is before us here, in the absence of a contest as to the genuineness of the signatures of the testator or the subscribing witnesses, or after those signatures have been proven genuine, raises a presumption of the due execution of the will. In re Bragg's Estate, 106 Mont. 132, 76 P.2d 57.
There is no question here as to the genuineness of the signatures of the testator or the subscribing witnesses, and there is no issue of fraud before us.
An action to probate a will is a special statutory proceeding, equitable in nature, and in a review on appeal, is governed by the rules that apply in an equitable action. In re Bragg's Estate, supra; In re Minder's Estate, 128 Mont., 270 P.2d 404.
It is our duty in equity cases and in matters and proceedings of an equitable nature to "review all questions of fact arising upon the evidence presented in the record * * * and determine the same, as well as questions of law * * *." R.C.M. 1947, § 93-216.
*394 No will, fair upon its face, should be denied probate, except for good and sound reasons. The policy of our courts is to sustain a will, if it is possible to do so, and every reasonable presumption will be indulged in favor of the due execution of a will. The presumption is against intestacy. In re Bragg's Estate, supra; see also Watts v. Choate, 117 Mont. 505, 160 P.2d 492. See In re Cummings' Estate, 92 Mont. 185, 11 P.2d 968; In re Silver's Estate, 98 Mont. 141, 38 P.2d 277.
What was it then, one may ask, after a reading of the law, the attestation clause, and the testimony of the subscribing witnesses, that moved the district court to deny the Woodburn will to probate, thus defeating the last will and wish of the testator?
The answer to this question is found in the "Order Amending Findings of Fact Incorporated in the Decision of the Court dated and filed on the 10th day of February, 1953," which in part provided:
"1. That said E.A. Woodburn signed said document at the end thereof, but did not sign the same in the presence of either of the subscribing witnesses."
This finding is contrary to the testimony of the subscribing witnesses, E.J. Garrahan and Donald Swan, who both swear in their affidavits heretofore set out that "the said instrument was signed by the said decedent * * * in the presence of myself." Since the testator only signed the will once, one would ordinarily conclude that such signing, if made "in the presence of myself [Garrahan and Swan]," was made at a time when both Garrahan and Swan were present.
However, the affidavits of Garrahan and Swan, showing their "testimony" given upon the hearing of the petition for probate of the will, do not show that both such subscribing witnesses were present at the time each signed his name and the testator signed or acknowledged his signature.
It seems apparent then, from the amended findings of fact, that the reason the district court concluded "that the document purporting to be the last will and testament of E.A. Woodburn does not meet the requirements of section 91-107, R.C.M. 1947 [supra]," and ordered "the admission to probate of the document * * * be and the same is hereby denied," was: "That the said E.A. Woodburn did not acknowledge the signature subscribed to the will to be his signature in the presence of both of the subscribing witnesses present at the same time; and did not acknowledge the document to be his will in the presence of both of the subscribing witnesses present at the same time * * * and at the time Donald Swan signed said document as a witness, the other subscribing witness, E.J. Garrahan, was not present."
R.C.M. 1947, § 91-107, supra, providing how a written will should be executed, is plain. It does not direct that the testator must sign or acknowledge his signature to the subscribing witnesses at a time when both such witnesses are present at the same time. Neither does such section of the statutes direct that the subscribing witnesses must sign the will at a time when both are present or in the presence of each other. To hold otherwise is to read into section 91-107 a requirement that is not there and was not written into such section by the legislators who enacted it into law. Had such lawmakers intended that such requirement be in such section, they could easily, by appropriate words, have inserted it.
The district court, as is this court, is bound by the provisions of R.C.M. 1947, § 93-401-15, in determining whether or not the Woodburn will complied with and met the requirements of section 91-107, supra. Section 93-401-15 provides in part that: "In the construction of a statute * * * the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted * * *."
In determining what is meant and intended by a statute, recourse must be had, first, to the language employed. Morrison v. Farmers' etc. State Bank, 70 Mont. 146, 225 P. 123; State v. Cudahy Packing Co., 33 Mont. 179, 82 P. 833, 114 Am. St. Rep. 804. We must presume, in such determination, that the terms and words used were intended to be understood in their ordinary *395 sense, unless it is made apparent from the context that they were intended to be given a different meaning. Morrison v. Farmers' etc. State Bank, supra; State ex rel. Anaconda Copper Min. Co. v. District Court, 26 Mont. 396, 68 P. 570, 69 P. 103.
The purposes of a statute requiring witnesses to a will are fully met and satisfied when section 91-107, supra, is interpreted and construed to permit a testator to sign or acknowledge his will to the subscribing witnesses separately, and such witnesses to sign their names while not in the presence of each other. See In re Bragg's Estate, supra; Watts v. Choate, supra.
"`The purpose of the statute is to make sure that the testator is aware that he is making a will, and that he be not imposed on and procured to sign a will when he supposes it to be some other instrument.'" In re Miller's Estate, 37 Mont. 545, 97 P. 935, 941, quoting from Trustees Theological Seminary of Auburn v. Calhoun, 25 N.Y. 422; In re Bragg's Estate, supra.
"`The right to make a testamentary disposition of property is not an inherent right; nor is it a right guaranteed by the fundamental law. Its exercise to any extent depends entirely upon the consent of the Legislature, as expressed in the statute enacted on the subject. * * * The purpose of the formalities prescribed is to prevent simulated and fraudulent writings from being probated and used as genuine.' [In re Noyes' Estate, 40 Mont. 178, 105 P. 1013.]" In re Williams' Estate, 50 Mont. 142, 145 P. 957, 960.
"In making it requisite to the validity of a will that there shall be witnesses who shall subscribe their names to the writing, the law has a threefold purpose: The identification of the paper, the protection of the testator from fraud and deception so that he may freely and voluntarily express his testamentary intent, and the ascertainment of the testamentary capacity of the testator. Witnesses are required for the purpose of seeing, in the first instance, that the testator was in such a mental condition as would enable him to make his will, and that he executed it under free conditions and in conformity with the law regulating testamentary dispositions. If a witness doubt the testamentary capacity of a testator he should not attest or subscribe the will.
"Witnesses, by subscribing the instrument, can thus identify it. One purpose for which witnesses are demanded is that of attesting and identifying the signature of the testator; and, in order to do this, it is essential that they should see the testator sign his name, or that the signature be shown to them and acknowledged to them by the testator to be his. Under modern practice in England and in a majority of the United States of America, the attestation of the witnesses is primarily to the signature of the testator, to enable them to testify that the deceased subscribed his name to the identical piece of paper on which they wrote their own. It is not necessary that there should be a formal attestation clause." Alexander's Commentaries on Wills, Vol. 1, pp. 598, 599, 600.
"Where the statute requires that the testator either sign or acknowledge the signature, signed by him or by someone at his request, in the presence of the attesting witnesses, and the testator sign his will in the presence of one witness, later acknowledging his signature to a second, and still later to a third witness, the signing and acknowledgment of the signature are sufficient to satisfy the statutory requirements as to signing and acknowledgment." Alexander's Commentaries on Wills, Vol. 1, p. 660, citing Webb v. Fleming, 30 Ga. 808, 76 Am. Dec. 675; Grubbs v. Marshall, 11 Ky. Law Rep. 870, 13 S.W. 447; Hoysradt v. Kingman, 22 N.Y. 372; Matter of Potter's Will, 33 N.Y. St. Rep. 936, 12 N.Y.S. 105.
The general rule is announced in 99 A.L.R. 555, as follows: "In the absence of a statute expressly requiring it, the general rule is that it is not necessary that the witnesses to a will sign or subscribe the same in the presence of each other. [Citing cases from Ala., Ark., Cal., Conn., Dist. of Columbia, Ga., Ill., Ind., Iowa, Ky., Maine, Md., Mass., Mich., Minn., Mo., Neb., N.H., N.J., N.Y., N.C., Ohio, Or., S.C., Tenn., Tex., Va., W. Va., Wis., England, Ireland, Canada, Australia and New Zealand.]"
*396 "It will also be observed, from the cases set out below, that under most of the American statutes the witnesses need not all be present at the same time, provided the testator signs or acknowledges before each one." 115 A.L.R. 690.
"While under most American statutes the attesting witnesses are required to subscribe the will in the presence of the testator, it is seldom necessary that they attest or subscribe in the presence of each other. In England, however, the statute requires attestation and subscription in the presence of both the testator and the other attesting witnesses, as in Wade v. Wade (W. Va.) (reported herewith, ante, 686 [Wade v. Wade, 119 W. Va. 596, 195 S.E. 339, 115 A.L.R. 686]).
"Adopting the view of the courts in the cases set out supra, II., a., discussed under the heading `Where term "in the presence of" is broadly construed,' namely, that a narrow or rigid construction of the statutes should not be allowed to defeat a testator's disposition of his property (and which resulted in several decisions to the effect that a will subscribed near the testator, but not in his presence, and returned almost immediately to the testator and acknowledged their signatures in his presence, amounted to a signing `in the presence of' the testator), the court in the Wade Case held that a witness's subsequent acknowledgment to another witness of his signature, previously made in the presence of the testator, was tantamount to the actual writing of his name in the presence of both the testator and the other witness. The court said: `We recognize that there is a division of authority on the principle herein employed, but, for the reasons presented, we are constrained to the belief that a different holding would be based on an illiberal and inflexible construction of the statute, giving pre-eminence to letter and not to spirit, and resulting in the thwarting of the intentions of testators even under circumstances where no possibility of fraud or impropriety exists.'" 115 A.L.R. 696.
"The statute of 1 Victoria, Ch. 26, § 9, added a requirement not found in the Statute of Frauds, that signing or acknowledgment of the signature by the testator should be in the presence of two or more witnesses `present at the same time.' This provision is found in the statutes of some of the states [but not in Montana]. Under the statute of Virginia, which contains the same provision, the testator signing and acknowledging his signature in the presence of one witness and subsequently acknowledging his signature to the other witness, the first witness being present, was held sufficient. The court said in substance that two witnesses may be in the presence of the testator, yet not in the presence of each other, and that to demand both circumstances would impose a double duty on the court of deciding double relations, would complicate proofs, and would endanger the testator's intentions." Alexander's Commentaries on Wills, Vol. 1, pp. 661, 662.
We have read the case of In re Estate of Emart, 175 Cal. 238, 165 P. 707, 710, L.R.A. 1917F 866, rendered June 1, 1917, which the district court used as authority in denying probate of the Woodburn will. The decision was by a divided court. Three judges of a five-judge court signed the majority opinion, and the other two judges dissented.
In the Emart case the majority opinion held that under a statute such as ours, section 91-107, supra, "From the language of our statute and this review of its history, we regard the conclusion as unescapable that our law requires the subscription or the acknowledgment to be before the two witnesses present at the same time." The history mentioned seems to have played a greater part in the determination made than the laws of construction. It was "the history of our Wills law." A reading of such majority opinion is unconvincing and we cannot subscribe to the result reached by it.
Rather does the dissenting opinion of Justice Sloss, concurred in by Chief Justice Angellotti, appeal to us as the better law, sense and conclusion. Some of it is appropriate here. Justice Sloss in part said: "Where the statute simply provides that a will must be in writing and attested by two or more witnesses subscribing their names thereto in the presence of the testator, or that the will shall be signed or acknowledged in the presence of *397 two witnesses, who shall subscribe the will in the presence of the testator, it has everywhere been held that the witnesses need not be together during the act of signing or acknowledgment on the part of the testator, or during their own attestation. Moore v. Spier, 80 Ala. 129; Gaylor's Appeal, 43 Conn. 82; In re Porter, 20 D.C. (9 Mackey) 493; Webb v. Fleming, 30 Ga. 808, 76 Am. Dec. 675; Flinn v. Owen, 58 Ill. 111; Hull v. Hull, 117 Iowa 738, 89 N.W. 979; Grubbs v. Marshall [11 Ky. Law Rep. 870], 13 S.W. 447; Chase v. Kittredge, 11 Allen (Mass.) 49, 87 Am. Dec. 687; Cravens v. Faulconer, 28 Mo. 19; Welch v. Adams, 63 N.H. 344, 1 A. 1, 56 Am. Rep. 521; In re Clark's Will (N.J. Prerog.), 52 A. 522; Watson v. Hinson, 162 N.C. 72, 77 S.E. 1089, Ann. Cas. 1915A, 870; Simmons v. Leonard, 91 Tenn. 183, 18 S.W. 280, 30 Am. St.Rep. 875; Barker v. Hinton, 62 W.Va. 639, 59 S.E. 614, 13 Ann. Cas. 1150; In re Smith's Will, 52 Wis. 543, 8 N.W. 616, 9 N.W. 665, 38 Am.Rep. 756. Two states have or had statutes substantially identical with our own, so far as the question under consideration is concerned, with the single exception that subdivision 2 provides for signature or acknowledgment in the presence of or to `each of' the attesting witnesses. In both of these states it has been held that the witnesses are not required to be present at the same time. Rogers v. Diamond, 13 Ark. 474; Hoysradt v. Kingman, 22 N.Y. 372, 379. The prevailing opinion takes the position that our Code section is to be given a meaning different from that of the New York statute, for the reason that the provision in force in California does not embody the word `each.' I think this argument gives entirely too much weight to what the New York Court of Appeals itself, in Hoysradt v. Kingman, terms a `verbal criticism.' That court based its conclusion upon the fact that the Legislature, with the former statutes and the judgments of the courts upon them before it, drew an act which omitted the significant words of the Wills Act `present at the same time,' thereby plainly indicating that it did not intend to adopt that requirement of the Wills Act. Our own statute also omits these words [as does Montana], and contains nothing of equivalent import. Nevertheless, the majority of this court reaches what seems to me the strange conclusion that our Legislature, with the earlier legislation on the subject before it, designed to adopt the rule of the Wills Act. If that was the purpose, it is difficult to see why the clear and unambiguous language of the Wills Act, requiring presence `at the same time,' was not copied into our law.
"No case is cited, and I have found none, holding that the witnesses must be present together, except where the statute explicitly calls for such unity, as in Connecticut, where it was provided that the will must be attested by three witnesses, `all of them subscribing in his presence and in the presence of each other' (Lane's Appeal, 57 Conn. 182, 17 A. 926, 4 L.R.A. 45, 14 Am. St. Rep. 94), or in Vermont, where the statute demanded attestation and subscription by `three or more credible witnesses in the presence of the testator, and of each other' (Adams v. Field, 21 Vt. 256), or in Virginia, under a statute containing the words `two competent witnesses present at the same time' (Green v. Crain, supra [12 Grat., Va., 252]) * * *.
"The question before us is not one of policy; it is one of interpretation merely. There is no inherent or natural right to pass property by will. The privilege is conferred by statute, and the extent and the mode of its exercise are determined by the legislative provision. The courts have not the right to overlook the failure to comply with a single requirement of the statute, whatever their view of its wisdom or necessity. In re Walker, 110 Cal. 387, 42 P. 815, 30 L.R.A. 460, 52 Am. St. Rep. 104. But neither are they justified in reading into the law a demand for the performance of any act or formality not included within its terms. * * *"
In the case of In re Dow's Estate, 181 Cal. 106, 183 P. 794, decided in 1919, the California court said: "With reference to the first contention, it is sufficient to say that section 1276 of the Civil Code does not require that the subscribing witnesses shall sign in the presence of each other. The requirement in that regard is: `There must *398 be two attesting witnesses, each of whom must sign the same as a witness at the end of the will, at the testator's request and in his presence.' The Supreme Courts of New York and Connecticut, under similar statutes, have held that it is not required that the witnesses sign in the presence of each other. Hoysradt v. Kingman, 22 N.Y. 372; Gaylor's Appeal, 43 Conn. 82; 1 Williams, Executors, 93; 6 Surg. Real Property, St. 342; 1 Jarman on Wills, 85. There is nothing in Estate of Toomes, 54 Cal. 509, 35 Am.Rep. 83, and In re Estate of Cartery, 56 Cal. 470, in conflict with this view. The question was not there incolved."
In Hull v. Hull, 117 Iowa 738, 89 N.W. 979, 981, the Iowa court said: "It seems to be well settled that, in the absence of statute, it is not requisite that the attestation by the two witnesses be in each other's presence; and therefore it is evident that they cannot always be witnesses of exactly the same act or declaration on the part of the testator * * *."
"Unless the statute expressly requires it, the witnesses are not required to sign in the presence of each other, but may sign at different times and places." Page on Wills, Vol. 1, § 361, p. 654; citing many cases. See also, In re Neil's Estate, 111 Or. 282, 226 P. 439; Moore v. Glover, 196 Okl. 177, 163 P.2d 1003; Collins v. Stroup, 71 N.D. 679, 3 N.W.2d 742.
For the reasons stated the decree and judgment of the district court is reversed and the cause is remanded to the district court, with directions to admit the last will and testament of E.A. Woodburn, deceased, to probate.
ADAIR, C. J., and BOTTOMLY, ANGSTMAN and ANDERSON, JJ., concur.