No. 82-247

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

NEIL L. KLAUDT, Personal Rep. of
the Estate of SCOTT A. KLAUDT, et al.,

Plaintiffs and Appellants,

vs.

CALVIN E. FLINK and STATE FARM MUTUAL
AUTOMOBILE INSURANCE CO.,

Defendants and Respondents.

---

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula
Honorable John Henson, Judge presiding.

Counsel of Record:

For Appellants:

Boone, Karlberg & Haddon, Missoula, Montana
Sam Haddon argued, Missoula, Montana

For Respondents:

Hughes, Kellner, Sullivan and Alke, Helena, Montana
Stuart L. Kellner argued, Helena, Montana
Williams Law Firm, Missoula, Montana

---

Submitted: November 16, 1982

Decided: January 28, 1983

JAN 28 1983

Filed: Ethel M. Harrison

Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a final judgment entered in the District Court of the Fourth Judicial District, Missoula County.

State Farm Mutual filed a motion to dismiss Count III of the complaint, which named it as defendant, for failure to state a claim on which relief could be granted. The District Court granted this motion and entered final judgment on May 25, 1982, pursuant to Rule 54(b) M.R.Civ.P. The court used the language contained in the rule in its judgment and stated. "the Court, pursuant to Rule 54(b) M.R.Civ.P., having expressly determined that thee is no just reason for delay in entering final judgment on said Count III," Thus, correctly certifying the issue to this Court. The failure of the District Court to provide its reasons for certification until after the notice of appeal was filed does not render the certification defective as long as the guidelines in rule 54(b) M.R.Civ.P. have been complied with. Therefore, our previous contrary holding in Churchill v. Holly Sugar Corp. 1981, __ Mont. __ , 629 P.2d 758, 38 St.Rep. 860, that no supplemental findings can be considered after notice of appeal is filed is overruled.

As both sides have aptly stated in their briefs, when considering a motion to dismiss, the material allegations of the pleading attacked are taken as true. Pelton v. Markegard (1978) 179 Mont. 102, 586 P.2d 306. Based on this rule the facts of this case seem to be:

1. That Neil Klaudt is the personal representative of the decedent, Scott A. Klaudt, and Niel and Caryl Klaudt are the parents of the decedent.

2. That the defendant, insured, Calvin Flink, was driving his car in which the decedent was a passenger, at a high rate of speed and rolled it on Mullen Road west of Missoula.

3. That the decedent was thrown from the vehicle and suffered injuries causing his death.

4. That the decedent was eighteen at the time of his death.

5. That following the accident defendant, Flink, admitted responsibility for his acts in operating the vehicle.

6. That State Farm was defendant Flink's, insurer at the time of the accident.

7. That Flink was intoxicated at the time of said accident, and later pleaded guilty to a reckless driving charge arising out of the accident.

8. That State Farm has denied liability and has refused to negotiate.

The sole issue presented by this appeal is whether the Montana Unfair Trade Practices section of the Insurance Code, specifically section 33-18-201(6), MCA, gives the plaintiffs a cause of action against a defendant's insurer, which can be prosecuted jointly with an action against the defendant insured?

This is a case of first impression in our jurisdiction, and centers around whether section 33-18-201, MCA, of the Unfair Trade Practices Section of the Montana Insurance Code confers a private cause of action against the insurer, upon third party claimants. In the present case the claimant is alleging a failure of the duty to settle under subsection (6) of section 33-18-201, MCA.

Under Montana law the duty to settle has always been a fiduciary duty running from the insurer to the insured, by virtue of the insurance policy. Thompson v. State Farm Mutual Automobile Ins. Co. (1973), 161 Mont. 207, 505 P.2d 423, (and cases cited therein). However, we now must look to see if a cause of action is conferred upon third parties by this statute.

There are no decisions interpreting this code section and its effect in Montana. But, this issue has arisen in other jurisdictions with similar statutes. There is a split of authority in those jurisdictions as to whether such statutes do indeed confer a private right of action on third party claimants for breach of duty to settle; see Royal Globe Insurance Co. v. Superior Court of Butte County (1979), 153 Cal.Rptr. 842, 592 P.2d 329.

Kranzush v. Badger State Mutual Casualty Co. (1981), 103 Wis.2d 56, 307 N.W.2d 256; Scroggins v. Allstate Insurance Co. (1979), 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718, Jenkins v. J.C. Penney Casualty Insurance Co. (1981),     W.Va.     , 280 S.E.2d 252; Tufts v. Madesco Investment Corp. (E.D.,Mo. 1981), 524 F.Supp. 484.

We must now view our statute and construe it according to our rules of statutory interpretation. These are best summarized in Montana Power v. Cremer (1979), 182 Mont. 277, 596 P.2d 483, where this Court stated:

> "[t]he development of the case law of Montana with respect to the rules of statutory construction may be summarized by the following analysis. (1) Is the interpretation consistent with the statute as a whole? (2) Does the interpretation reflect the intent of the legislature considering the plain meaning of the language of the statute? (3) Is the interpretation reasonable so as to avoid absurd results? and (4) Has the agency charged with the interpretation of the statute placed a construction on the Statute? (citations omitted)." 596 P.2d 484.

Looking at section 33-18-201, MCA, as a whole, as is required when interpreting statutes, it seems relatively clear that third party claimants are protected. Although all the subsections don't specifically refer to claimants, certain of them do. It would be absurd to assume that the legislature would insert these words into the statute without them having some meaning, as the legislature is presumed not to pass useless or meaningless legislation. State ex rel. Dick Irvin Inc. v. Anderson (1974), 164 Mont. 513, 525 P.2d 564, 570.

The insertion of the word "claimant" in the statute evidences that such parties are owed an obligation or duty under that statute. When that obligation is viewed in conjunction with section 33-10-1004, MCA, which is the remedies provision of the Unfair Trade Practices Section of the Insurance Code, it is clear that a private cause of action can be maintained. Section 33-18-1004(5), MCA, provides:

> "This section shall not be deemed to affect or prevent the imposition of any penalty provided

- 4 -

> by this code or by other law for violation of
> any other provision of this chapter, whether
> or not any such hearing is called or held or
> such desist order issued." (Emphasis added.)

Based on the above subsection, it is evident that the insurance commissioner's action is not the exclusive remedy for an unfair trade practice violation. Therefore, a civil action may be maintained, because as section 27-1-104(1), MCA, aptly points out a civil action arises out of breach of an obligation. The intent of the legislature is clear; under section 33-18-201, MCA, an insurer has an obligation to claimants as well as insureds where unfair trade practices are concerned.

The third criteria of statutory interpretation is easily satisfied as no absurd result is arrived at by allowing a claimant to sue under the statute. Indeed the statute would have little effect on settlement of large claims if a contrary conclusion were reached.

The final step in interpreting the statute is to see if the agency in charge of administering the statute has placed any interpretation on it. Neither side in this case has called our attention to any such interpretation, nor has our research revealed any.

We therefore hold that section 33-18-201(6), MCA, does create an obligation running from the insurer to the claimant. When such an obligation is breached the claimant has the basis for a civil action.

However, at this point, we must differ with the position adopted by the other jurisdictions which allow an action such as this to be prosecuted only after the insureds liability has been adjudicated. We believe that the action may be filed and tried before, concurrent with, or after liability has been determined. We see no problems with the possibility of contrary findings in the two actions, the doctrine of res judicata, collateral estoppel or the like because different issues are involved in the two cases. The issue in the action against the insurer for violation of the insurance code is simply an action to determine whether or

not the insurer violated its duty of fair dealing in settlement negotiations with the claimant, while the action to determine the ultimate liability of the driver rests on considerations of negligence and comparative negligence.

The obligation to negotiate in good faith and to promptly settle claims does not mean that liability has been determined. Section 33-18-203(6) states that the insurer's obligation arises when liability has become "reasonably clear." In evaluating the insurance case, the jury must determine whether the insurer negotiated in good faith given the facts it then had. This consideration is separate and apart from the jury's ultimate consideration of the merits of any given action.

We have considered whether the result here reached contravenes the purpose of Rule 411, M.R.Evid., on the admissibility of insurance. The rule only prohibits the introduction of insurance where it is offered for the purpose of showing negligence or liability. Here, the issues to be tried are separate and the rule is not violated.

We realize that many will view this result as harsh. However, the legislature has reacted to what it perceives to be an important problem. Insurance companies have, and are able to exert, leverage against individual claimants because of the disparity in resource base. Justice delayed is often justice denied. Public policy calls for a meaningful solution. The legislature has spoken and we, by this decision, breath life into the legislative product.

We must note, however, that the statute itself imposes limitations on the pursuit of any such action. We cannot ignore the ordinary plain meaning of the words in the statute; they are presumed to have their ordinary meaning. In Re Woodburns Estate (1954), 128 Mont. 145, 153, 273 P.2d 391. Therefore, the initial requirement, set out in the opening clause of section 33-18-201, MCA, of showing the lack of good faith in settlement negotiations or other unfair trade practices, to be general business practices

of that particular company, must be met before an action may be successfully maintained. As was stated by the Court in Jenkins v. J.C. Penney Casualty Co., supra, it is possible that multiple violations occurring in the same claim could be sufficient to show a frequent business practice, as would violations by the same company in different cases. 280 S.E.2d at 260. Proof of violations evidencing a general business practice, by the same company in different cases, can be obtained from other attorneys, claimants, or people having knowledge of the company's general practice; Jenkins v. J.C. Penney Casualty Insurance Co., 280 S.E.2d at 260.

The judgment of the District Court is reversed and the cause is remanded for trial.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

- 7 -

Mr. Justice Frank B. Morrison, Jr., concurs and dissents as follows:

I concur in the majority's holding that the statutes in question create an independent action on behalf of a tort victim against the tort feasor's insurer. I dissent from the holding in the majority opinion which permits the action against the insurer to be consolidated with the action against the tort feasor.

The failure of insurance companies to expeditiously settle claims gave rise to passage of the legislation now before this Court. The majority holding in this case will certainly cause a much more expeditious handling of claims.

I am concerned about the prejudice which can result from consolidating the two actions. Additionally, lay jurors will have a very difficult time separating evidence which relates to the case against the insurer from evidence which bears upon the issues in the principle action against the tort feasor. The likely confusion and potential prejudice lead me to oppose consolidation.

I would reverse and remand allowing the action against the insurance company to be brought at any time but would hold that the action against the insurer cannot be consolidated with the action against the tort feasor.

Justice

Mr. Justice Fred J. Weber dissents as follows:

I respectfully dissent from the holding of the majority that section 33-18-201(6), MCA, creates an obligation running from the insurer to the noninsured claimant (the claimant normally described as a third party claimant, as distinguished from an insured claimant), the breach of which may be the basis of a civil action. I further respectfully dissent from the majority conclusion that such an action may be filed and tried, before, concurrent with, or after liability has been determined.

I agree with the conclusion of the majority that the rules of statutory interpretation to be applied are correctly summarized in Montana Power v. Cremer (1979), 182 Mont. 277, 596 P.2d 483. However, the majority opinion has failed to properly apply the first two rules of the Cremer summary:

> "(1) Is the interpretation consistent with the statute as a whole? (2) Does the interpretation reflect the intent of the legislature considering the plain meaning of the language of the statute?"

We are required to consider the statute as a whole and the plain meaning of the language. The provisions in question are contained in the Unfair Trade Practices chapter of the Montana Insurance Code. The general purposes of this particular chapter are described in section 33-18-101, MCA:

> "The purpose of this chapter is to regulate trade practices in the business of insurance . . . by defining . . . all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined."

The prohibition against unfair methods is described in section 33-18-102, MCA:

"(1) No person shall engage . . . in any trade practice which is defined in this chapter as or determined pursuant to this chapter to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."

The "person" referred to in the preceding section is defined by section 33-1-202, MCA, to include an insurer, company, reciprocal or interinsurance exchange, corporation, or other legal entity. The defendant insurance company therefore fits the definition of a "person" in that section.

I fail to see how the statutory language of section 33-18-201, MCA, can be construed to create an obligation running from the insurance company to a third party claimant. It states:

"Unfair claim settlement practices prohibited. No person may, with such frequency as to indicate a general business practice, do any of the following:

". . .

"(6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlement of claims in which liability has become reasonably clear;" (Underscoring added.)

In substance this provides that an insurance company cannot engage in a general business practice of denying liability where such liability is reasonably clear.

Section 33-18-201, MCA, contains fourteen paragraphs which set forth unfair claims settlement practices. Other sections in the chapter set forth prohibitions against misrepresentation, false advertising, twisting, publishing false financial statements, unfair discrimination as to rates, preferred rates as to fictitious groups, no rebates, illegal dealings in premiums, extension of credit to policy holders, defaming an insurer, boycott, coercion or intimi-

dation, false applications, restrictions on solicitation, and a number of other activities. See sections 33-18-202 to 33-18-501, MCA. This is a very comprehensive list of unfair trade practices in the business of insurance.

Nowhere in this extensive statutory framework of unfair trade practices is there a specific provision granting to either insureds or third party claimants the right to bring an action to enforce any of the provisions of this chapter. Sections 33-18-1001 to 1005, MCA, set forth enforcement provisions which essentially grant to the insurance commissioner the power to examine the actions of insurance companies and to seek cease and desist orders. The ultimate penalties for violation of a cease and desist order include fines of up to $1,000 for each day with a total penalty not to exceed $10,000. In addition, section 33-1-104, MCA, provides that each violation of the Insurance Code "in addition to any administrative penalty" upon conviction shall be punishable by a fine of not less than $50 or more than $1,000 or in by imprisonment in the county jail for not less than thirty days or more than ninety days or by both fine and imprisonment.

The purpose of the chapter is to regulate trade practices. The prohibition is against an insurance company engaging in trade practices which are unfair or deceptive as described. Of particular significance is the prohibition against an insurance company neglecting to effectuate settlement of claims "with such frequency as to indicate a general business practice." When followed by enforcement sections which require action by the commissioner of insurance only, I must conclude that the interpretation of

the majority is not consistent with the statute as a whole as is required under Cremer. I further conclude that the majority opinion does not reflect the intention of the legislature when we study the plain meaning of the statutory language. The majority opinion ignores the absence of any provision in the legislation granting a right of suit by either the insureds or third party claimants. This readily could have been inserted by the legislature had that been its intent.

The majority has disregarded the rule contained in our recent opinion of State of Montana ex rel. Palmer & Conrad v. Hart (1982), _____ Mont. _____, _____ P.2d _____, 39 St.Rep. 2277, in which we stated:

> "This Court must ascertain and declare the substance of the statute it construes. We may not insert what has been omitted. Section 1-2-101, MCA. Chennault v. Sager (1980), _____ Mont. _____, 610 P.2d 173, 176, 37 St.Rep. 857, 861."

The majority opinion has inserted into the statute elements which had been omitted by the legislature. Regardless of our viewpoints on the equities of enabling third party claimants to sue insurance companies, we should not presume to insert into a statute that which has been omitted. Such action is for the legislature, not this Court.

In the interest of brevity, I will not attempt to analyze the various cases on the question of the private right of action by third party claimants for breach of duty to settle, as cited in the majority opinion. I do note that the leading case in California, Royal Globe Insurance Co. v. Superior Court of Butte County (1979), 153 Cal.Rptr. 842,

592 P.2d 329, is based upon a statute with significant differences from our Montana code sections, none of which have been analyzed or considered in the majority opinion. The dissent in Royal Globe Insurance Co. contains many of the arguments which I believe to be persuasive. This is summarized in the following quotation from 592 P.2d at 340:

> "If, as the majority asserts, the Legislature had intended to change the course of California law 180 degrees and thereafter to impose upon carriers civil liability to injured third persons for failing to settle claims against their insured, then surely much more direct and precise language would have been selected." (Underscoring added.)

The last paragraph of the majority opinion holds that proof of violations evidencing a general business practice is required before an action can be successfully maintained. This recognizes the statutory prohibitions, including that in section 33-18-201(6), MCA, which prohibit an insurance company from engaging in the prohibited claim settlement practices "with such frequency as to indicate a general business practice." The further result of the majority holding is that the first person to be so mistreated by an insurance company would be unable to recover because he could not prove a general business practice. Presumably the first "few" persons so mistreated by an insurance company could not recover until the mistreatment had become so consistent as to become a general business practice. Had it been the intention of the legislature to grant a right of action to the plaintiff, it seems absurd to suggest that the first few mistreated persons have no cause of action because of the absence of a general busines practice. I suggest this interpretation violates the third rule of statutory

construction in Cremer:

> "(3) Is the interpretation reasonable so as to avoid absurd results?"

In addition, I join in the dissent of Justice Morrison in which he would not permit an action against the insurer to be consolidated with the action against the tort feasor. This would also be consistent with Rule 411, Mont.R.Evid., as stated in D'Hoodge v. McCann (1968), 151 Mont. 353, 433 P.2d 477, where this Court stated:

> "Ordinarily injection of the fact that the defendant is protected by liability insurance into such a case, directly or indirectly, by evidence, arguments, or remarks constitutes reversible error."

I would affirm the District Court.

_____
Justice

Mr. Justice Daniel J. Shea dissents as follows:

I join in the dissent of Justice Weber. I further agree with Justices Morrison and Weber that the claims of the third party should not be permitted to be joined with and tried with the action against the claimed tort feasor. By interpreting the statutes as permitting third party claims against insurance companies who insure an alleged tort feasor, we have ignored the plain wording of the Unfair Trade Practices chapter of the Montana Insurance Code. In resorting to the so-called rules of statutory construction to reach this result, the majority has further ignored and tortured the rules of statutory construction. The result is judicial legislation run rampant.

_____
Justice

-14-